UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

"**IN ADMIRALTY**"

RONALD CONWAY, an individual,

    Plaintiff,

vs.

M/Y UTOPIA IV, Official No. 1305829, MMSI No. 339328000, her engines, tackle, gear, appurtenances, etc., *in rem*,

    Defendant.

**VERIFIED *IN REM* COMPLAINT TO ENFORCE PLAINTIFF'S PREFERRED MARITIME LIEN**

Plaintiff Ronald Conway ("Conway"), by and through undersigned counsel, hereby sues M/Y Utopia IV (the "Vessel"), which is owned, managed, and operated by Utopia Yachting LLC ("Owner").

**PARTIES, JURISDICTION, AND VENUE**

1. This case involves Plaintiff Conway's *in rem* negligence claim arising under the General Maritime Law of the United States, the Passenger Vessel Services Act, 46 U.S.C. § 3501 et seq., and the laws of the State of Florida, as applicable.

2. At all material times, Defendant M/Y Utopia IV, *in rem*, was and remains a 175.8' USA flag for-hire passenger yacht built in Pisa, Italy, bearing Official Number 1305829 and MMSI No. 339328000 with a hailing port in Miami Beach, Florida.

3. The Vessel is currently located within this District and expected to remain in this District pending her arrest.

4. The instant *in rem* Complaint of Plaintiff Conway against Defendant Utopia IV, her engines, tackle, gear, appurtenances, etc., *in rem*, is to enforce Plaintiff Conway's preferred

maritime liens for negligence based on Defendant's failure to provide Plaintiff Conway with a reasonably safe vessel including tender, resulting in Plaintiff Conway, as passenger, to suffer injuries.

5. Plaintiff Conway is a person above the age of majority and is a citizen and resident of the State of California.

6. Plaintiff Conway has a preferred maritime lien for his injuries caused by Defendant's negligence in failing to furnish Plaintiff Conway a reasonably safe vessel including tender. U.S.C. § 31301(5)(B).

7. This Court has Jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1333, diversity and admiralty jurisdiction, respectively.

8. Venue is proper in this District because the Vessel is located within the waters of this District.

9. The amount of damages sought in this action, including unliquidated damages and attorneys' fees in this action, is an amount in excess of $3,000,000.

10. Plaintiff Conway's damages include noneconomic damages such as pain and suffering and emotional distress. Since the damages have not been reduced to a liquidated amount, Plaintiff Conway also requests a trial on damages.

## GENERAL ALLEGATIONS

11. At all times material hereto, Owner owned, operated, managed, maintained and/or controlled the Vessel.

12. From at least August 8, 2021 until August 11, 2021, Plaintiff Conway was a passenger of the Vessel owned and operated by Owner, which was in navigable waters.

*The Charter Agreement*

13. Plaintiff Conway entered into an agreement with Owner to charter the Vessel for eleven days beginning on August 8, 2021 under the Recreational Bareboat Charter Agreement ("Charter Agreement"), dated April 15, 2021.

14. Owner's representative and agent Moran Yacht & Ship Group, Inc., a Florida Corporation ("Moran"), was also signatory to the Charter Agreement.

15. Plaintiff Conway paid at least $582,144.00 of consideration for use of the Vessel under the Charter Agreement.

16. Contemporaneously with the Charter Agreement, Plaintiff Conway entered into a Vessel Services Agreement ("Services Agreement", and together with the Charter Agreement, the "Agreements") which included as a party the European-based services company selected and controlled by Owner called ALM Yacht Management d.o.o.

17. Plaintiff Conway paid at least $144,286.00 of consideration under the Services Agreement, as well as an advanced provisioning allowance of $216,429.00.

18. Pursuant to the Agreements, Plaintiff Conway and his guests were scheduled to depart from Kennebunkport, Maine on August 8, 2021 and travel to Nantucket and Vineyard Haven, Massachusetts, as well as Newport, Rhode Island and Sag Harbor, New York, before departing the Vessel in New York City on August 18, 2021 (the "Scheduled Trip").

*Non-Demise Charter*

19. Despite the Charter Agreement, the Owner retained complete and exclusive control of the Vessel during the Scheduled Trip, including when Plaintiff Conway was injured.

20. At all material times:

   a. Owner selected the Vessel's crew;
   b. Owner denied Plaintiff Conway the ability to select the crew or contest the crew unilaterally selected by Owner;
   c. Owner directed and controlled the Vessel's crew;
   d. Owner maintained and exercised control over the crew members; and
   e. Owner retained control over insurance coverage requirements and transportation safety issues.

*Scheduled Trip*

21. From at least August 8, 2021 until on or about August 11, 2021, Plaintiff Conway was a passenger of the Vessel owned and operated by Owner, which was in navigable waters.

22. On August 8, 2021, Plaintiff Conway and other passengers departed on the Vessel from Kennebunkport, Maine for a recreational cruise scheduled for ten days (the "Scheduled Trip").

23. At all relevant times, a tender boat was an appurtenance of the Vessel.

*Injuries*

24. On August 11, 2021, the fourth day of the Scheduled Trip, Plaintiff Conway suffered severe injuries while exiting the Vessel's tender boat onto the dock at Edgartown Harbor in Edgartown, Massachusetts.

25. The distance from the tender floor to the dock was unreasonably high for an individual passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit, and no step stool or portable or stationary steps of any type were provided to Plaintiff Conway.

26. While exiting the tender to the dock, Plaintiff Conway's left knee made a popping noise, and Plaintiff Conway immediately began to collapse.

27. The crew of the Vessel directed Plaintiff Conway into a sitting position and placed ice on Plaintiff Conway's injured knee.

28. Plaintiff Conway was then taken by ambulance to Martha's Vineyard Hospital Emergency Department in Oak Bluffs, Massachusetts.

*Serious Medical Consequences and Emergency Surgery*

29. Plaintiff Conway's Injuries included a ruptured and torn left quadricep tendon and other damage to his left knee.

30. After treatment at the Martha's Vineyard Hospital Emergency Department, to minimize the chance of permanent or long-term damage, Plaintiff Conway was flown by

medevac to the University of California-San Francisco for emergency orthopedic surgery on August 13, 2021 (the "Emergency Surgery").

31.     After the Emergency Surgery, Plaintiff Conway is required to wear a stationary steel brace from his hip to my ankle for an extended period.

### *Significant Required Long-term Care and Rehabilitation*.

32.     Since the Injuries on August 11, 2021, Plaintiff Conway has been severely physically disabled.

33.     It is unclear whether Plaintiff Conway will be able to make a full recovery even after promptly taking all of the difficult, sustained, required actions to attempt to mitigate potential long-term damage.

34.     Following the Surgery, Plaintiff Conway is required to perform intense, painful physical therapy and a careful rehabilitation regimen for several hours per day under direction and full-time care of a specialist orthopedic nurse.

35.     At other times, Plaintiff Conway had had to effectively lay flat and could not move without assistance from a specialist orthopedic nurse.

36.     The Injuries should have never occurred and were a direct result of Defendant's negligence in failing to provide a reasonably safe Vessel, including its appurtenance.

### *Plaintiffs Request to Owner to Furnish Insurance Policy*

37.     On August 29, 2021, pursuant to Clause 16 of the Charter agreement, Plaintiff Conway requested from Owner a copy of the Vessel's insurance policy ("the Policy") to ensure that there was adequate protection and security to indemnify him for the Injuries.

38.     On September 7, 2021, Owner communicated (through its agent and representative Moran) to Plaintiff Conway's representative that Owner refuses to furnish a copy of the Policy or any insurance documents to Plaintiff Conway. Thus, because of Owner's actions, Plaintiff Conway remains unable to assure proper insurance coverage and an unreserved agreement of Owner's insurer (if any) to indemnify for the Injuries.

39. Plaintiff Conway now seeks to arrest the vessel to secure an asset to provide recovery for his Injuries.

## COUNT I
## *IN REM* CLAIM AGAINST THE VESSEL UTOPIA IV
## (NEGLIGENCE)

40. Plaintiff Conway re-alleges and incorporates by reference the allegations in paragraphs 1 through 39 of this Complaint, and further alleges as follows:

41. This is Plaintiff Conway's *in rem* action to enforce a lien for damages arising from Defendant's negligence in failing to provide Plaintiff Conway with a reasonably safe vessel, resulting in Plaintiff Conway suffering Injuries.

42. At all material times, Owner was the true owner of the Vessel.

43. At all material times, the Vessel was owned, managed, operated and/or controlled by Owner.

44. At all material times, Owner owed Plaintiff Conway a duty to exercise reasonable care under the circumstances in providing a reasonably safe vessel, including a reasonably safe tender.

45. The duty owed to Plaintiff Conway was breached because the Vessel's tender was not reasonably safe.

46. The Vessel's owner(s), manager(s), and/or operator(s) knew or should have known that the Vessel's tender was not reasonably safe and knowingly failed to furnish Plaintiff Conway with a reasonably safe vessel including tender.

47. The Defendant's negligence in failing to provide a reasonably safe vessel including tender was a legal cause of injury and damage to Plaintiff Conway by reason of the following:

   a. Failure to adequately maintain the Vessel in a reasonably safe condition;

   b. Failure to adequately maintain the Vessel in a condition reasonably fit for its intended purpose;

    c. Failing to equip the Vessel with a reasonably safe means to disembark the Vessel's tender onto the dock;

    d. Failing to provide any equipment to facilitate a safe exit from the tender onto a raised dock;

    e. Failure to inspect the Vessel for fitness or dangerous conditions;

    f. Failure to repair and/or correct the Vessel's dangerous condition; and

    g. Failure to warn Plaintiff Conway of dangerous conditions;

48. As a direct and proximate result of Defendant's negligence in failing to provide a reasonably safe vessel including tender, Plaintiff Conway was injured while disembarking the Vessel's tender and suffered (i) economic damages in the past and in the future including but not limited to medical expenses for medical care and treatment, household expenses, loss of prejudgment value of services hired, loss of the value of the Scheduled Trip itself; (ii) non-economic damages including bodily injury which required surgery, pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement; and (iii) and other damages which may be proven at the trial of this case. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

    **WHEREFORE**, Plaintiff Conway respectfully requests:

    a. That a Warrant for Arrest *in rem* issue against Utopia IV and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

    b. That Plaintiff Conway be decreed to have a preferred maritime lien upon the *in rem* Defendant Utopia IV, and that such lien be foreclosed in accordance with the law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiff Conway;

    c. That judgment be entered in Plaintiff Conway's favor for all recoverable damages permitted by law, including compensatory damages, court costs, pre- and post-judgment interest, attorneys' fees, punitive damages, and such other relief as the Court deems just; and

    d. That Plaintiff Conway be permitted to bid his judgment against the Vessel at a U.S. Marshal's sale.

Dated November 22, 2021

        Respectfully submitted,

        MASE MEBANE SEITZ, P.A
        *Attorneys for Plaintiff*
        2601 South Bayshore Drive, Suite 800
        Miami, Florida  33133
        Telephone:   (305) 377-3770
        Facsimile:    (305) 377-0080

By:    /s/ *Tyler Rauh*
        CURTIS J. MASE
        Florida Bar No.: 478083
        cmase@maselaw.com
        TYLER J. RAUH
        Florida Bar No.: 1023404
        trauh@maselaw.com

*Attorneys Pending Pro Hac Vice Admission*

RONALD A. MCINTIRE
California Bar No. 127407
RMcIntire@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E, Suite 1700
Los Angeles, California 90067
Telephone:   310.788.9900
Facsimile:    310.788.3399

CHRISTOPHER G. SIGMUND
Texas Bar No. 24122835
CSigmund@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Telephone: 214.965.7700
Facsimile: 214.965.7799

MICHAEL A. BARCOTT
Washington State Bar No. 13317
mbarcott@hwb-law.com
HOLMES WEDDLE & BARCOTT
3101 Western Avenue, Suite 500
Seattle, Washington 98121
Telephone: 206.292.8008
Facsimile: 206.340.0289

## VERIFICATION

I, Ronald Conway, make this Verification and the following representations:

1. I am over the age of eighteen and competent to make this Verification.
2. I have read the foregoing Complaint and hereby verify and represent under oath that its contents are true to the best of my knowledge, and/or information and belief.
3. The allegations in the complaint are based on my personal knowledge as the injured party in this complaint and/or information and documents obtained from my agents or others.

FURTHER AFFIANT SAYETH NAUGHT

_____
Ronald Conway

STATE OF CALIFORNIA )
                    )
COUNTY OF MARIN     )

The foregoing instrument was acknowledged before me on November 19, 2021, by Ronald Conway who is personally known to me.

_____
Notary Public
My Commission Expires: March 10, 2022

PEGGY J. ACKERBERG
Notary Public – California
San Francisco County
Commission # 2230866
My Comm. Expires Mar 10, 2022