# EXHIBIT A

# Recreational Bareboat Charter Agreement

**American Yacht Charter Association**

Name of Vessel (the "**Vessel**"): UTOPIA IV    Length: 63m/206'    Type: Motor Yacht

Port of Registry or U.S. Official Number: Miami Beach, FL    Flag: USA

Vessel Insurance Limits: Hull: $39,000,000    Protection & Indemnity: $10,000,000    Deductible: $500,000 Ded

This Date: April 15, 2021    and Place: Fort Lauderdale, FL

## PARTIES

Owner (the "**OWNER**"): Utopia Yachting LLC    Address: c/o 1300 SE 17th St., Ste 204, Ft. Lauderdale, FL 33316

Charterer (the "**CHARTERER**"): Ron Conway    Address: c/o 1885 W. State Rd. 84, #101, Ft. Lauderdale, FL 33315

Broker (the "**Broker**"): Brian Muston & Associates    Address: 1885 W. State Rd. 84 #101, Ft. Lauderdale, FL 33315

Escrow Agent (the "**Escrow Agent**"): Moran Yacht & Ship Group, Inc    Address: 1300 SE 17th St., Ste 204, Ft. Lauderdale, FL 33316

## CHARTER PARTICULARS

Charter Period: From: 12:00 noon    Hrs on the: ~~27th of July,~~ 8th of August 2021 [initialed]

To: 12:00 noon    Hrs on the: ~~6th of August,~~ 18th of August 2021 [initialed]

Place of Delivery: Newport, RI    Place of Re-Delivery: Newport, RI

Cruising Area: New England

Maximum Number of Guests Sleeping ( 12 ) and Cruising ( 12 ) on board

Crew Consisting of: Captain plus 12

## FEES

Charter Fee: $577,144.00

Delivery/Re-Delivery Fees: $5,000.00

Additional Payments: N/A

Security Deposit: N/A

### TO BE PAID AS FOLLOWS

First Installment: $288,572.00 (50% of Charter Fee) due no later than April 22, 2021

Second Installment: $293,572.00 (Balance of Charter Fee + delivery) due on or before June 25, 2021

To the following Broker's account and deemed paid only when cleared:
Brian Muston & Associates Escrow/Bank of America, 901 17th Street, Ft. Lauderdale FL 33316/
ABA: 026009593/SWIFT: BOFAUS3N/Account: 8980 2263 0547
For onward transmission to Stakeholder/Escrow Agent

**SEE ADDITIONAL CONDITIONS – CLAUSE 30**

## SIGNATURES

The OWNER and CHARTERER agree that the terms above; **Clauses 1-30**, inclusive, below; and any Additional Conditions or attached addenda form part of this Agreement. This Agreement will be binding only upon signature by both Parties or transmission by both Parties of signed copies by facsimile or other electronic means, including, without limitation, transmission of signed copies in Portable Document Format (PDF).

_Joe Bolyard_    04/23/2021
OWNER: Utopia Yachting LLC    Date

_Taylor Craig_    04/23/2021
Escrow Agent: Moran Yacht & Ship Group, Inc    Date

_Ron Conway_ [signature]    4-19-2021
CHARTERER: Ron Conway    Date

_Marcelle Kump_ [signature]    April 19, 2021
Broker: Brian Muston & Associates    Date

© Copyright AYCA. Produced by AYCA - The American Yacht Charter Association and adopted by MYBA - The Worldwide Yachting Association. Neither organization will be responsible for any abuse or misrepresentation of this Agreement.
Revised MARCH 2017

**Recreational Bareboat Charter Agreement**  American Yacht Charter Association

**CLAUSE 1.**  **Agreement to Let and Hire.**

    A. The OWNER agrees to Charter the Vessel to the CHARTERER and not to enter into any other agreement for the Charter of the Vessel for the same period.

    B. The CHARTERER agrees to hire the Vessel and shall pay the Charter Fee, Delivery/Re-Delivery Fee, the Security Deposit (if any), and any other agreed charges, in cleared funds, no later than the dates and to the account as provided above.

**CLAUSE 2.**  **Delivery.**

    A. At the beginning of the Charter Period, the OWNER shall deliver the Vessel at the Place of Delivery, and the CHARTERER shall take delivery of the Vessel, in full commission and working order, seaworthy, clean, in good condition throughout, with Tanks filled and ready for service, with all equipment required by the US Coast Guard and the Vessel's flag state, including up to-date safety and life-saving equipment (including life-jackets for children, if any of the CHARTERER's guests are children.

    B. The Vessel will be fitted out as appropriate for a vessel of her size and type as required to operate in the Cruising Area in which this Charter takes place and enabling the CHARTERER to use the Vessel as provided in Clause 13.

    C. The OWNER does not warrant the Vessel's use and comfort in bad weather conditions for all cruises or passages within the Cruising Area.

    D. The CHARTERER shall inspect the Vessel before beginning the Charter and shall immediately notify the Broker or the OWNER in writing if there is any complaint or visible defect as to the condition, equipment, or accommodations of the Vessel.

**CLAUSE 3.**  **Re-Delivery.**

The CHARTERER shall Re-Deliver the Vessel to the OWNER at the Place of Re-Delivery free of any debts incurred by the CHARTERER as provided in Clause 29 below and in as good a condition as when delivery was taken, except for fair wear and tear arising from ordinary use. If the CHARTERER wishes, and with the OWNER's consent, which will not be unreasonably withheld, the CHARTERER may Re-Deliver the Vessel at the Place of Re-Delivery and disembark before the end of the Charter Period, but such early Re-Delivery will not entitle the CHARTERER to any refund of any part of the Charter Fee.

**CLAUSE 4.**  **Cruising Area.**

The CHARTERER shall restrict the cruising of the Vessel to the Cruising Area and to regions within the Cruising Area in which the Vessel is legally permitted to cruise.

**CLAUSE 5.**  **Maximum Number of Persons; Responsibility for Children; Health of the CHARTERER's Party.**

    A. The CHARTERER shall not, at any time during the Charter Period, permit more than the Maximum Number of Guests Sleeping or Cruising on board.

    B. If any of the CHARTERER's guests or invitees are children, the CHARTERER will be fully responsible for their conduct, entertainment, and safety.

    C. The nature of a charter may render it unsuitable for anyone with physical disability or undergoing medical treatment. By signing this Agreement, the CHARTERER warrants the medical fitness of all members of the CHARTERER's party for the voyage contemplated by this agreement. The CHARTERER and the CHARTERER's guests undertake to have all necessary visas and vaccinations for the countries to be visited.

**CLAUSE 6.**  **CHARTERER's Authority and Responsibilities.**

    A. This Agreement constitutes a demise charter of the Vessel to the CHARTERER under the maritime law of the United States. Therefore, the OWNER shall deliver and, during the Charter Period, the CHARTERER shall accept, full possession, command, and navigation of the Vessel. In addition, the CHARTERER shall furnish its own crew and pay expenses and operating costs as provided in Clause 8.

    B. If the CHARTERER chooses to utilize the services of a captain, the CHARTERER represents and warrants that such captain will be qualified and, if necessary, licensed, provided that the CHARTERER shall remain responsible for the operation and management of the Vessel.

**CLAUSE 7.**  **Captain's Authority.**

    A. If the CHARTERER is to operate the Vessel, the CHARTERER represents and warrants that the CHARTERER is experienced, licensed, if applicable, and competent in the handling and operation of a Vessel of the type named in this Agreement and that the CHARTERER has sufficient practical knowledge of seamanship, piloting, and Rules-of-the-Road to properly exercise full authority over the Vessel.

    B. The CHARTERER shall allow the Vessel to be operated during the Charter Period only by a person qualified to do so.

    C. The CHARTERER shall direct the captain to immediately notify the Broker and Escrow Agent of any breakdowns, disablements, crew changes, accidents, or other significant incidents that occur during the Charter Period.

PLEASE INITIAL: Owner._____  Charterer: _____

DocuSign Envelope ID: D7B49CB6-5456-42EG-A6B7-ABBA0CEB652C
Case 1:21-cv-24099-PCH   Document 21-1   Entered on FLSD Docket 12/07/2021   Page 4 of 10

Recreational Bareboat Charter Agreement

American Yacht Charter Association

**CLAUSE 8.   Expenses and Operating Costs.**

The CHARTERER shall be responsible for the operating costs, including, without limitation, all fuel costs for the Vessel, its tenders, and all watersports equipment; berthing dues and harbor charges, including customs formalities and Harbor, pilot, and divers' fees. Charges for water and electricity taken from shore and any charges for waste disposal; ships' agents' fees, where applicable; national and local taxes, as applicable; food, beverages, personal laundry, and communications costs; hire or purchase costs of any special equipment placed on board at the CHARTERER's request; and any Additional Payments or any other payments as provided in Clause 30, for the entire Charter Period, for the CHARTERER, the CHARTERER's guests, and any captain and crew retained by the CHARTERER.

**CLAUSE 9.   Delay in Delivery or Failure to Deliver.**

A. **OWNER's Delay in Delivery.** If by reason of Force Majeure (as defined in Clause 18.A.), the OWNER fails to deliver the Vessel to the CHARTERER at the Place of Delivery at the commencement of the Charter Period, the OWNER will not be in default of this Agreement so long as the delivery is made within forty-eight (48) hours of the scheduled commencement date, or within one-tenth (1/10th) of the Charter Period, whichever period is shorter. In such event, the OWNER shall refund pro rata any payments made by the CHARTERER to the OWNER or the Escrow Agent for the period of delay, or, alternatively, the CHARTERER and the OWNER may agree to extend the Charter Period for a time equal to the delay.

B. **OWNER's Failure to Deliver as a Result of Force Majeure.**
   (1) If by reason of Force Majeure, the OWNER fails to deliver the Vessel within forty-eight (48) hours or a period equivalent to one-tenth (1/10th) of the Charter Period, whichever period is shorter, then the OWNER will be considered in default as from the time delivery was due and the CHARTERER may treat this Agreement as terminated.
   (2) The CHARTERER's exclusive remedy for the OWNER's failure to deliver the vessel by reason of Force Majeure will be to receive repayment, without interest, of the full amount of all payments made by the CHARTERER to the OWNER or the Escrow Agent.
   (3) Alternatively, the CHARTERER and the OWNER may agree to extend the Charter Period for a time equal to the delay.

C. **OWNER's Failure to Deliver Other than as a Result of Force Majeure.**
   (1) If the OWNER fails to deliver the Vessel at the Place of Delivery at the commencement of the Charter Period, other than by reason of Force Majeure, the CHARTERER may treat this Agreement as repudiated by the OWNER.
   (2) The CHARTERER will be entitled to repayment, without interest, of the full amount of all payments made by him to the OWNER or the Escrow Agent, and will, in addition, be paid by the OWNER, as liquidated damages, an amount equivalent to fifty percent (50%) of the Charter Fee.

D. **Cancellation by OWNER as a Result of Force Majeure.** If prior to the commencement of the Charter Period the OWNER tenders notice of cancellation via the Broker and, if the cancellation is by reason of Force Majeure, the remedy in Clause 9.B. above will apply.

E. **Cancellation by OWNER Other than as a Result of Force Majeure.** If the cancellation is for any reason other than Force Majeure, the CHARTERER will be entitled to repayment, without interest, of the full amount of all payments made by him to the OWNER, the Escrow Agent, or the Broker, and the CHARTERER will, in addition, be entitled to liquidated damages to be calculated and paid immediately as follows:
   (1) thirty (30) days or more before commencement of the Charter Period, an amount equivalent to twenty-five percent (25%) of the Charter Fee.
   (2) more than fourteen (14) days, but less than thirty (30) days before commencement of the Charter Period, an amount equivalent to thirty-five percent (35%) of the Charter Fee; or
   (3) fourteen (14) days or less before commencement of the Charter Period, an amount equivalent to fifty percent (50%) of the Charter Fee.

F. **Payments as Liquidated Damages.** The parties agree that the CHARTERER's damages as a result of the OWNER's cancellation or failure to deliver the Vessel are difficult to estimate as of the date of this Agreement and would be difficult for the CHARTERER to prove. Therefore, the Parties intend for payment of amounts under this Clause 9 to compensate the CHARTERER and not to punish the OWNER.

G. **Broker's Commission in Event of Delay or Cancellation by OWNER.** In all such instances, the OWNER shall also pay to the Broker the full commission due as if the Charter had been completed.

**CLAUSE 10.   Delay in Re-Delivery.**

A. If Re-Delivery of the Vessel is delayed by reason of Force Majeure, Re-Delivery shall be effected as soon as possible. Thereafter and in the meantime, the conditions of this Agreement will remain in force, but without penalty or additional charge against the CHARTERER.

B. If the CHARTERER fails to Re-Deliver the Vessel to the OWNER at the Place of Re-Delivery due to intentional delay or change of itinerary, then the CHARTERER shall immediately pay to the OWNER, by direct wire transfer via the Escrow Agent's escrow account, for such additional time, at the daily charter rate plus forty percent (40%) of such daily rate until the Vessel is Re-Delivered at the agreed location, and the CHARTERER shall also pay any additional necessary expenses incurred by the OWNER in effecting such Re-Delivery. If delay in Re-Delivery exceeds twenty-four (24) hours, the CHARTERER shall also indemnify the OWNER against any loss or damage which the OWNER shall suffer by reason of deprivation of use of the Vessel or cancellation of, or delay in delivery under, any subsequent charter of the Vessel.

PLEASE INITIAL: Owner _TB_   Charterer: _RC_

Recreational Bareboat Charter Agreement                              American Yacht Charter Association

C. The Parties agree that the OWNER's damages as a result of the CHARTERER's failure to Re-Deliver the Vessel are difficult to estimate as of the date of this Agreement and would be difficult for the OWNER to prove. Therefore, the Parties intend for payment of amounts under this Clause 10 to compensate the OWNER and not to punish the CHARTERER.

**CLAUSE 11.   Cancellation by Charterer and Consequences of Non-Payment.**

   A. If the CHARTERER gives notice of cancellation before the commencement of the Charter Period, the OWNER may retain part or all of the Charter Fee as follows: (i) if the CHARTERER gives notice of cancellation after this Agreement is signed but before the First Installment is due, the CHARTERER shall pay, and the OWNER may retain, the First Installment; and (ii) if the CHARTERER gives notice of cancellation after the First Installment is due, the OWNER may retain the First Installment and any other amounts due and payable as of the date of cancellation. If any amounts due and payable as of the date of cancellation have not been paid, the CHARTERER shall pay such amounts to the OWNER immediately upon cancellation.

   B. If the CHARTERER gives notice of cancellation or, after receiving notice from the OWNER of nonpayment, fails to pay any amount due under this Agreement, then the OWNER may treat this Agreement as repudiated and retain the full amount of any payments made by the CHARTERER.

   D. Notwithstanding the OWNER's right to receive or retain all payments as aforesaid, the OWNER will be under a duty to mitigate its loss. In the event that the OWNER is able to re-charter the Vessel for all or part of the Charter Period, the OWNER shall give credit for the net amount of all payments made to the OWNER or the Escrow Agent arising from the re-chartering of the Vessel during all or part of the Charter Period, after deduction of all commissions and other consequential expenses arising from such re-chartering.

   C. The intention is that the OWNER will receive the same in net proceeds from any re-chartering as would have been received under this Agreement.

   D. The OWNER shall use the OWNER's best efforts to re-charter the Vessel and shall not unreasonably withhold the OWNER's agreement to re-charter, provided that the OWNER may refuse any charter that the OWNER reasonably determines would be detrimental to the Vessel, its reputation, or its schedule.

   E. If any part of the Delivery/Re-Delivery Fee has been earned (including for any required return voyage) before the date of cancellation, then the CHARTERER shall pay such expenses.

   F. If, after signature of this Agreement, the OWNER suffers financial failure, is adjudicated bankrupt, or becomes subject to a liquidator, receiver, or administrator appointed over all or part of the OWNER's assets, then the CHARTERER may cancel this Agreement and all monies paid to the OWNER or the Escrow Agent pursuant to this Agreement shall be refunded without deduction. In such event, the OWNER shall pay the Broker the commission earned in booking the Charter Period which otherwise would have been carried out but for the OWNER's financial circumstances.

**CLAUSE 12.   Breakdown or Disablement.**

   A. If, after Delivery, the Vessel at any time becomes disabled by breakdown of machinery, grounding, collision, or other cause so as to prevent reasonable use of the Vessel by the CHARTERER for a period between twelve (12) and forty-eight (48) consecutive hours, or one-tenth (1/10th) of the Charter Period, whichever is shorter, and the disablement has not been brought about by any act or default of the CHARTERER, then the OWNER shall make a pro rata refund of all payments made by the CHARTERER to the OWNER or the Escrow Agent for the period of the disablement or, alternatively, the CHARTERER and the OWNER may agree to extend the Charter Period for a time equal to the period of disablement.

   B. If the CHARTERER wishes to invoke this Clause 12, the CHARTERER shall immediately give written notice to the Escrow Agent or to the OWNER. The CHARTERER shall pay normal expenses during the period of disablement. In the event of the actual or constructive total loss of the Vessel, or if the Vessel is disabled, as aforesaid, for a consecutive period of more than forty-eight (48) hours or one-tenth (1/10th) of the Charter Period, whichever is shorter, the CHARTERER may terminate this Agreement by notice in writing to the OWNER or to the Escrow Agent.

   C. As soon as practicable after such termination, all payments made by the CHARTERER to the OWNER or the Escrow Agent will be repaid to the CHARTERER pro rata without interest for that proportion of the Charter Period outstanding after the date and time on which the loss occurred or the disablement began. In the event of such termination, the CHARTERER may effect Re-Delivery by giving up possession of the Vessel where she lies.

   D. The CHARTERER may recover from the OWNER the reasonable cost of returning the CHARTERER and the CHARTERER's guests to the Place of Re-Delivery via scheduled services, together with reasonable accommodation expenses incurred, if any.

   E. Alternatively, after a consecutive period of disablement of more than forty-eight (48) hours or one-tenth (1/10th) of the Charter Period, whichever is shorter, and dependent on the nature and seriousness of the disablement, by mutual agreement, the CHARTERER may elect to remain on board for the duration of the Charter Period and the CHARTERER will then have no further or additional claim against the OWNER.

**CLAUSE 13.   Use of Vessel.**

   A. **Pleasure Use Limitation**. The CHARTERER shall use the Vessel exclusively as a private pleasure vessel and shall not transport cargo, carry passengers for hire, engage in trade, or violate any laws or regulation of any jurisdiction where the Vessel may travel, including, without limitation, any marine parks, sanctuaries, and protected areas.

   B. **Navigational Limits**. The CHARTERER shall not navigate the Vessel beyond the navigational limits set forth in the Vessel's insurance policy without prior written approval by the Vessel's insurer, with any additional premium that may be paid by the CHARTERER.

PLEASE INITIAL:   Owner  *[TB]*   Charterer:  *[RC]*                                                        Page 4 of 9

Case 1:21-cv-24099-PCH   Document 21-1   Entered on FLSD Docket 12/07/2021   Page 6 of 10

Recreational Bareboat Charter Agreement                              American Yacht Charter Association

C. **Compliance with Laws.** The CHARTERER shall comply and shall ensure that the CHARTERER's guests comply with the laws and regulations of any country where the Vessel may travel during the Charter Period.
   1) If the CHARTERER or any of the CHARTERER's guests commits any offense contrary to the laws or regulations of any country that results in the Vessel being detained, arrested, seized, or fined, the CHARTERER shall indemnify the OWNER against all loss, damage, or expense incurred by the OWNER as a result and the OWNER may, by notice to the CHARTERER, terminate this Agreement immediately.
   2) The CHARTERER shall pay any fines, penalties, damages, and forfeitures incurred as a result of any negligent or intentionally wrongful act(s) of the CHARTERER or the CHARTERER's guests or invitees, and the CHARTERER shall indemnify and hold the OWNER, the Escrow Agent, and the Broker harmless against and from any claim arising out of or in connection with such negligence or intentional acts.
D. **No Pets Without OWNER's Written Consent.** The CHARTERER shall ensure that no pets or other animals are brought on board the Vessel without the OWNER's prior written consent.
E. **No Nuisance.** The CHARTERER shall ensure that the behavior of the CHARTERER and the CHARTERER's guests does not cause a nuisance to any person or bring the Vessel into disrepute.
F. **Zero Tolerance for Drugs or Contraband.**
   1) The use, transport, or possession of illegal drugs or narcotics, or of any other contraband, or the participation in any other unlawful activity, such as the transport of illegal aliens, is strictly prohibited.
   2) The participation in any of these activities by the CHARTERER or any of the CHARTERER's guests or invitees constitutes a breach of this Agreement and will be cause for immediate termination of this Agreement without refund of Charter Fee or any other payments made by the CHARTERER.
   3) It is also specifically understood that the possession or use of any weapons (including particularly firearms) is strictly prohibited on board the Vessel and failure to comply will be sufficient reason for the OWNER to terminate the Charter immediately without refund or recourse against the OWNER.
G. The CHARTERER may, in its sole discretion, cause the Vessel to be surveyed, at the CHARTERER's expense, before and after the Charter Period to assess the Vessel's condition. If the CHARTERER chooses to have the Vessel surveyed, the CHARTERER shall notify the OWNER within three (3) days of the signing of this Agreement. Upon receiving such notice, the OWNER shall use reasonable efforts to make the Vessel available for survey before and after the Charter Period.

**CLAUSE 14.   Non-Assignment.**

The CHARTERER shall not assign this Agreement, subcharter the Vessel or any part thereof, or part with control of the Vessel at any time.

**CLAUSE 15.   Sale Of The Vessel.**

A. The OWNER shall not enter into any agreement to sell the Vessel during the Charter Period without the CHARTERER's prior written consent, which the CHARTERER may withhold in its sole discretion.

B. If the OWNER enters into an agreement to sell the Vessel at any time after the signing of this Agreement but before delivery of the Vessel to the CHARTERER, then the OWNER shall immediately, upon entering into such agreement, give written notice thereof to the CHARTERER via the Broker. All Parties to this Agreement shall keep this information in strict confidence.

C. Should the Vessel be sold, one of the following provisions will apply:
   (1) The OWNER shall arrange for the Vessel's buyer (the "Buyer") to take over this Agreement and perform the Charter on the same terms and conditions as hereunder, either by assignment of this Agreement, or by way of a new agreement between the CHARTERER and the Buyer having substantially the same terms and provisions without material deviation together with written cancellation of this original Agreement. Where the Charter is taken over by the Buyer on the same terms and conditions, there will be no penalty against the OWNER and no additional commission due to the Broker.
   (2) If the Buyer is unwilling or unable to assume the obligations of the OWNER under this Agreement, then this Agreement will be considered as having been cancelled by the OWNER in accordance with Clause 9. All payments made by the CHARTERER will be promptly repaid in full to the CHARTERER without deduction and, in addition, liquidated damages calculated in accordance with Clause 9.E(1), (2), or (3), as appropriate, will be paid. The OWNER shall pay the Broker and the Escrow Agent the full commissions due on this original Agreement no later than seventy-two (72) hours after formal cancellation.

**CLAUSE 16.   Insurance.**

A. The OWNER shall insure the Vessel throughout the Charter with first-class insurers against all risks, on such terms, and subject to such deductible as are customary for a vessel of the Vessel's size, type, and value, on cover no less than is provided under the Institute Yacht Clauses 1/11/85 or other recognized terms, extended to provide permission to charter as under the terms of this Agreement and to cover third-party liability. The OWNER shall make available for inspection, upon reasonable notice by the CHARTERER, copies of all relevant insurance documentation, which will also be carried on board the Vessel. The OWNER shall pay the premium for such insurance.

B. The CHARTERER Acknowledges that it is the CHARTERER's responsibility to determine, in its sole discretion, whether such insurance coverage, terms, and applicable deductibles are adequate and appropriate for the CHARTERER's purposes. If the CHARTERER deems any additional coverage necessary, then the CHARTERER shall arrange with an insurance broker before the commencement of the Charter for separate or supplemental insurance at the CHARTERER's cost.

PLEASE INITIAL: Owner: _TB_    Charterer: _RC_

DocuSign Envelope ID: D7B49CB6-5456-425G-A6B7-ABBA0CEB652C
Case 1:21-cv-24099-PCH  Document 21-1  Entered on FLSD Docket 12/07/2021  Page 7 of 10

Recreational Bareboat Charter Agreement

American Yacht Charter Association

C. The OWNER shall ensure that the CHARTERER is covered throughout the Charter as an "additional assured" or "covered person" under the OWNER's insurance policy. Except to the extent that either the CHARTERER or any of the CHARTERER's guests has acted in any way as to void or limit coverage under the OWNER's insurance policy, the CHARTERER will not be liable, with respect to any one accident or occurrence, for any damage to the Vessel or to any third party caused by the negligence or willful act of the CHARTERER or the CHARTERER's guests.

D. If the CHARTERER or any of the CHARTERER's guests acts in such a way, whether by negligence or willful act, as to void or limit coverage under the OWNER's insurance policy, then the CHARTERER shall indemnify and hold the OWNER harmless against and from any claim for loss, damage, or expense attributable to such negligence or willful act, to the extent that such loss, damage, or expense would otherwise be covered by the OWNER's insurance policy.

E. The CHARTERER acknowledges that the CHARTERER is responsible for insuring the CHARTERER's personal effects on board the Vessel and ashore, and for insuring against any cost or expense incurred as a result of any accident or emergency during the Charter, including, without limitation, emergency medical evacuation or other emergency transport for the CHARTERER or the CHARTERER's guests, to the extent the same are not covered by the OWNER's insurance policy.

F. The CHARTERER acknowledges that neither cancellation and curtailment insurance, nor CHARTERER's liability insurance, as such, is included in this agreement.

**CLAUSE 17. Security Deposit.**

Unless otherwise are provided on Page 1 of this Agreement, any required Security Deposit will be held by the Escrow Agent in the Escrow Agent's escrow account on the OWNER's behalf and may be used in, or towards, discharging any liability that the CHARTERER may incur under any of the provisions of this Agreement. To the extent that the Security Deposit is not so used, then it will be refunded to the CHARTERER without interest, within twenty-four (24) Working Hours after the end of the Charter Period or the settlement of all outstanding questions, whichever occurs later.

**CLAUSE 18. Definitions.**

A. **Force Majeure.** In this Agreement "Force Majeure" means any cause directly attributable to acts, events, non-happenings, omissions, accidents, or Acts of God beyond the reasonable control of the OWNER or the CHARTERER, including, without limitation, strikes, lock-outs, or other labor disputes, civil commotion, riots, blockade, invasion, war, fire, explosion, sabotage, storm, collision, grounding, fog, governmental act, or regulation, major mechanical, or electrical breakdown beyond the OWNER's control and not caused by the OWNER's negligence. Shipyard delays not attributable to the aforementioned conditions do not constitute Force Majeure. Crew changes do not constitute Force Majeure. Force Majeure does not excuse the OWNER from payment of the Broker's commission.

B. **Owners, Charterers, Broker, and Escrow Agent.** Throughout this Agreement, the terms "OWNER," "CHARTERER," "Broker," or "Escrow Agent" and corresponding pronouns shall be construed to apply whether the OWNER, CHARTERER, Broker, or Escrow Agent is male or female, corporate or individual, or singular or plural, as the case may be.

C. **Escrow Agent.** The OWNER, the CHARTERER, and the Broker acknowledge that the Escrow Agent will receive and hold all funds paid by the CHARTERER in connection this Agreement except for any fees, such as Delivery/Re-Delivery Fees, that may, by agreement between the OWNER and the CHARTERER, be paid directly to the OWNER. The Escrow Agent shall hold all funds paid by the CHARTERER in connection with this Agreement in a separate account not accessible to either the OWNER or the CHARTERER and shall disburse such funds to the appropriate parties only as provided in Clause 23 below.

D. **Working Days and Hours.** A "Working Day" is a day on which the bank of the Escrow Agent named on the contract is open for business. A "Working Hour" is an hour between 9 a.m. and 5 p.m., in the time zone where such bank is located, on a Working Day.

**CLAUSE 19. Salvage.**

During the Charter Period, the benefits, if any, from all derelicts, salvages, and towages, after paying the crew's proportion, and hire for the relevant Charter Period and expenses, shall be shared equally between the OWNER and the CHARTERER.

**CLAUSE 20. Law and Arbitration.**

A. This Agreement will be governed by and construed in accordance with the maritime law of the United States and, to the extent such law fails to supply a rule of decision, the law of the State of Florida regardless of any conflicts-of-law principles that would require the application of any other law. Any dispute arising out of or in connection with this Agreement or any alleged breach hereof will be resolved by binding and confidential arbitration in Fort Lauderdale, Florida, or such other place as the Parties may agree in writing, in accordance with the Rules of the Miami Maritime Arbitration Council (the "MMAC") current when the arbitration proceedings are commenced.

B. A party wishing to refer a dispute to arbitration shall send notice in writing to the other party appointing its arbitrator and requiring the other party to appoint its arbitrator within seven (7) calendar days of such notice. If the other party fails to appoint an arbiter within seven (7) calendar days of such notice, then the first party's arbitrator will act as sole arbitrator. Otherwise, upon the other party's appointment of a second arbitrator, the two arbitrators so appointed will appoint jointly, within seven (7) calendar days, the third arbitrator, who will serve as chairperson of the panel with respect to administrative matters. If the two arbitrators fail to appoint a third arbitrator within seven (7) calendar days, then either party may apply to the MMAC to appoint the third arbitrator. The sole arbitrator or the three arbitrators, as the case may be, will resolve the dispute as soon as practicable, but in any case no more than ninety (90) calendar days after the date on which the first arbitrator was appointed.

PLEASE INITIAL: Owner: _TB_   Charterer: _RC_

DocuSign Envelope ID: D7B49CB6-5456-425G-A6B7-ABBA0CEB652C
Case 1:21-cv-24099-PCH   Document 21-1   Entered on FLSD Docket 12/07/2021   Page 8 of 10

Recreational Bareboat Charter Agreement

American Yacht Charter Association

C. The decision of the arbitrator, if a sole arbitrator, or the arbitrators or any two of them, if a panel of three arbitrators, will be final and binding on the Parties and may be enforced by any court of competent jurisdiction. The arbitrator or arbitrators will award costs and expenses of arbitration, including, without limitation, costs of expert witnesses and attorneys' fees, to the prevailing party as provided in Clause 26.

D. In cases in which the total amount of all claims, including any counterclaims, does not exceed fifty thousand dollars ($50,000) or an equivalent sum in another currency, or if the Parties agree in writing, the arbitration will be conducted in accordance with the Simplified Claims Procedure of the MMAC current when the arbitration proceedings are commenced.

E. Notwithstanding the above, the Parties may agree in writing at any time to refer any dispute arising out of or in connection with this Agreement to mediation before such person and according to such rules as the Parties may agree.

F. The Parties shall not bring any proceedings in any other forum or jurisdiction based on any claim arising out of or in connection with this Agreement, except that either party may bring (i) proceedings in any jurisdiction to arrest or attach the property of the other party as security for an arbitration award or (ii) such other proceedings as may be necessary to ratify, enforce, or confirm an arbitration award.

G. If either party gives notice of arbitration proceedings, the Escrow Agent, after receiving notification of such proceedings, shall not deal with those monies held by the Escrow Agent without a mutual written agreement signed by both the OWNER and the CHARTERER or in accordance with the order of the arbitrators or their final award.

H. The monies should be held in a designated client account. This account should be interest bearing where banking rules permit. The Escrow Agent may, with the agreement of the OWNER and the CHARTERER, pay the monies into an escrow account jointly controlled by the accredited legal representatives of both Parties pending the result of the arbitration.

**CLAUSE 21.   Broker(s).**
The OWNER and the CHARTERER acknowledge that the Broker represents the CHARTERER and the Escrow Agent represents the OWNER. The OWNER and the CHARTERER also acknowledge and agree that in case the Escrow Agent is also the Broker, the Escrow Agent represents the interests of both the OWNER and of the CHARTERER; that the OWNER and the CHARTERER hereby waive any conflict of interest in connection with such joint representation; and that such representation will not render this Agreement voidable. The OWNER agrees to pay the Broker the customary and usual brokerage fees in connection with the charter, any extensions, renewals, or subsequent charters, and/or in connection with the subsequent purchase of the Vessel by the CHARTERER within a period of two (2) years from the end of the Charter Period, as provided below. The Broker shall sign this Agreement for the purposes of this Clause 21 only and the Escrow Agent shall sign this Agreement for purposes of this Clause 21 and Clause 23 below. By signing this Agreement, the OWNER and the CHARTERER both confirm and agree to the following:

A. The Broker's commission will be deemed to be earned by the Broker upon the OWNER and the CHARTERER signing this Agreement and the Broker's receipt of the CHARTERER's initial Deposit in cleared funds. The commission will be payable by the OWNER on the full Charter Fee plus the Delivery/Re-Delivery Fee, if applicable, but excluding running expenses, according to Clause 22 below, whether or not the OWNER defaults for any reason including Force Majeure. In the event of cancellation by the CHARTERER, the commission will be deducted as an expense from the Deposit. If the CHARTERER's deposit is refunded, the OWNER shall pay the commission.

B. If the CHARTERER should extend this Agreement, the OWNER shall pay to the Broker the customary and usual brokerage fees on the gross Charter Fee for the extension, on the same basis as provided herein.

C. If the CHARTERER re-charters the Vessel from the OWNER within two (2) years from the end of the Charter Period, whether or not on the same terms, then the OWNER shall pay to the Broker the customary and usual brokerage fees on the Charter Fee paid for that further charter upon the same basis as provided herein. However, if the CHARTERER re-charters the Vessel within that same two-year period via another bona fide broker, to whom the customary and usual brokerage fees are being paid, the OWNER shall pay a commission of one third (1/3rd) of the full rate to the Broker and two-thirds (2/3rds) to the new broker. This applies only following the free choice of the CHARTERER and is not relevant if the change of broker is suggested or solicited by the OWNER, his agent, the captain, or the OWNER's representative.

D. If any Agreement is reached directly between the CHARTERER and the OWNER for the purchase of the Vessel within two (2) years from the end of the Charter Period, then the OWNER shall pay to the Broker the sales commission. However, if the CHARTERER purchases the Vessel from the OWNER via a bona fide sales broker to whom the customary and usual brokerage fees are being paid, then the OWNER shall pay, or shall ensure that the new broker shall pay, a sum equivalent to not less than fifteen percent (15%) of the gross sales commission. It is the responsibility of the OWNER to advise any future sales broker of this liability. This applies only following the free choice of the CHARTERER and is not relevant if the change of broker is suggested or solicited by the OWNER, his/her agent, or the OWNER's representative.

E. The Broker and the Escrow Agent will have no responsibility for any loss, damage, or injury to the person or property of the OWNER or of the CHARTERER or any of their guests, servants, or agents, and further the Broker and the Escrow Agent will be under no liability for any errors of judgment or description or otherwise of whatsoever nature and howsoever arising and will be under no further obligation, duty, or responsibility to the OWNER or the CHARTERER save as provided herein. The OWNER and the CHARTERER shall jointly and severally indemnify and hold harmless the Broker and the Escrow Agent for any loss or damage sustained by them as a result of any liability to any third party (person, firm, company, or authority), whether as a result of the Broker or Escrow Agent's negligence or otherwise, arising from promoting or introducing this Charter, assisting in the performance of this Agreement, or performing the duty of Escrow Agent.

F. The Parties understand and agree that the Broker and the Escrow Agent do not guarantee the performance of the OWNER and the CHARTERER under this Agreement. All information and data regarding the Vessel has been provided and represented to the Broker and the Escrow Agent by the OWNER, and while the Broker and the Escrow Agent stand ready to provide the CHARTERER with such information as is believed to be reliable, the Broker and the Escrow Agent do not act as guarantor of such information, and the OWNER and the CHARTERER agree to indemnify and hold the Broker and the Escrow Agent harmless if such information is not reliable, whether as result of the Broker or Escrow Agent's negligence or otherwise.

PLEASE INITIAL: Owner: TB   Charterer: RC

DocuSign Envelope ID: D7B49CB6-5456-425C-A6B7-ABBA0CEB652C
Case 1:21-cv-24099-PCH   Document 21-1   Entered on FLSD Docket 12/07/2021   Page 9 of 10

Recreational Bareboat Charter Agreement                                      American Yacht
                                                                             Charter Association

G. It is understood that the function of the Broker and the Escrow Agent is solely that of arranging the charter, and the Broker and the Escrow Agent are in no way responsible for the actions of the CHARTERER or the OWNER under this Agreement. It is further understood that once this Agreement has been signed by both Parties and a deposit of the Charter Fee has been paid, the Broker will have no further obligation or responsibility in connection herewith to either Party, nor will the Broker be liable to be sued on the contract, nor be liable for any matters which occur during the charter. The Parties shall indemnify, hold harmless, and defend the Broker and the Escrow Agent from any and all claims by either of them, their guests, invitees, employees, agents, and third parties for any liabilities for loss, damage, personal injury, death, or any claims whatsoever, whether as a result of the Broker or Escrow Agent's negligence or otherwise.

H. The Broker and the Escrow Agent will not be responsible or liable in any way for any claim, loss, death, injury, or damage to persons or property suffered or incurred by any person in connection with this Charter, or any portion of it. Further, the Broker and the Escrow Agent also will not be responsible for any delays, substitutions, equipment, change in services or accommodations, or the acts or omissions on the part of the operators or crew of any Vessel described in this Agreement, or for any changes in the itinerary deemed necessary or appropriate for the safety or convenience of the CHARTERER, the CHARTERER's guests, the captain, the crew, or any other passengers.

I. Representations made by the Broker and Escrow Agent concerning the Cruising Area and the Vessel, the captain, and the crew are made in good faith but without warranty. It is understood and agreed by the OWNER and the CHARTERER that the Broker and the Escrow Agent have made no representations or warranties, either actual, expressed, or implied, as to the condition or operation of the Vessel, nor has the OWNER or the CHARTERER been influenced to enter into this Agreement in reliance upon any representation or warranty made by the Broker or the Escrow Agent.

J. Any dispute under this Clause 21 may be separately arbitrated under Clause 20.

**CLAUSE 22.  Force Majeure.**

When Force Majeure is invoked in relation to breakdown or disablement, the OWNER shall instruct the OWNER's representative to submit a detailed report, a copy of the vessel's maintenance log, if applicable, and all the relevant supporting documentation to the CHARTERER or the CHARTERER's representative.

**CLAUSE 23.  Payment of Charter Fees and Other Monies to the OWNER**

The Broker shall transfer all funds received pursuant to this Agreement, less the Broker' commission to the Escrow Agent. The Escrow Agent shall hold all funds received pursuant to this Agreement in a designated account in the currency of this Agreement. The Escrow Agent shall pay 50% (fifty percent) of the Charter Fee to the OWNER by bank transfer on the first day of the Charter Period or the first Working Day thereafter. At the same time, the Escrow Agent shall pay the Delivery/Re-Delivery Fees and any Additional Payments to the OWNER or otherwise as the OWNER may direct. If the Escrow Agent does not receive written notice of a complaint under Clause 24 before the end of the Charter Period, the Escrow Agent shall pay the balance of the Charter Fee to the OWNER on the first Working Day after the end of the Charter Period. If the Escrow Agent receives notice of a complaint as aforesaid, the Escrow Agent shall retain the balance of the Charter Fee for fourteen (14) calendar days after the end of the Charter Period. If the OWNER and the CHARTERER agree to resolve the complaint within that period, the Escrow Agent shall disburse the balance of the Charter Fee as directed in a writing signed by both the OWNER and the CHARTERER. If the Escrow Agent receives notice of arbitration from the BROKER or the CHARTERER as provided in Clause 20 within that period, the Escrow Agent shall hold the balance of the Charter Fee until the arbitration results in an award or the OWNER and the CHARTERER resolve the matter by agreement, whichever happens first. The Escrow Agent shall immediately thereafter disburse the balance of the Charter Fee as provided in the arbitration award or an agreement signed by both the OWNER and the CHARTERER. If the complaint has not been resolved by agreement and neither the OWNER nor the CHARTERER has given notice of arbitration as provided in Clause 20 within fourteen (14) calendar days of the end of the Charter Period, the Escrow Agent shall pay the balance of the Charter Fee to the OWNER.

**CLAUSE 24.  Complaints.**

The CHARTERER shall notify the OWNER, or the Broker on the OWNER's behalf, as is practical after any event or occurrence giving rise to a complaint that has taken place, and in all cases within twenty-four (24) hours of the event or occurrence, unless it is impracticable due to failure or non-availability of communications equipment. The complaint may be made orally in the first instance, but must be confirmed as soon as possible in writing (by fax, mail or email) specifying the precise nature of the complaint.

**CLAUSE 25.  Notices.**

Any notice given or required to be given by the CHARTERER or the OWNER under this Agreement will be communicated in any form of writing and will be deemed to have been properly given as follows: (i) if by mail, when and if dispatched pre-paid and properly addressed by mail or bona fide courier service; (ii) if by fax, when and if transmitted with confirmation; and (iii) if by email, when and if transmitted without any error or non-delivery message. Notice must be given, in the case of the OWNER, to him or to the Escrow Agent at their respective addresses set forth on Page 1 of this Agreement or, in the case of the CHARTERER, to the CHARTERER's address set forth on Page 1 of this Agreement, to the Broker, or, where appropriate, to the CHARTERER on board the Vessel.

**CLAUSE 26.  Attorneys' Fees.**

In any arbitration or litigation arising out of or in connection with this Agreement, the prevailing party will be entitled to recover from the non-prevailing party or parties, in addition to any other relief to which the prevailing party may be entitled, reasonable attorneys' fees (including paralegal fees), court costs, and all other expenses incurred in such arbitration or litigation by the prevailing party, even if not taxable as court costs, including, without limitation, all fees, costs, and expenses incident to appeals. For purposes of this Clause 26, a party will be considered the "prevailing party" to the extent that (i) such party initiated the proceedings and substantially obtained the relief it sought, whether by award, judgment, or voluntary agreement; (ii) such party did not initiate the proceedings and did not obtain award or judgment in its favor, but the other party did not substantially obtain the relief it sought; or (iii) such party did not initiate the proceedings and the other party to the proceedings withdrew its claim or action without having substantially obtained the relief it sought. No_____ his Clause 26 will be construed to affect the mandatory arbitration provisions of Clause 20 of this Agreement.

PLEASE INITIAL: Owner:_____   Charterer: ___*RC*___                                      Page 8 of 9

DocuSign Envelope ID: D7B49CB6-E456-42EC-A6B7-ABBA0CEB652C
Case 1:21-cv-24099-PCH   Document 21-1   Entered on FLSD Docket 12/07/2021   Page 10 of 10

Recreational Bareboat Charter Agreement                                American Yacht Charter Association

**CLAUSE 27.  Indemnification.**

The CHARTERER shall indemnify, defend, and hold the OWNER harmless against and from any liability for loss, damage, or expense incurred by the CHARTERER or the CHARTERER's guests as a result of the negligence or willful act of the CHARTERER or the CHARTERER's guests, to the extent such loss, damage, or expense is not covered by the OWNER's insurance policy.

**CLAUSE 28.  OWNER's Assurances.**

The OWNER represents, warrants, and covenants that, at Delivery, the Vessel will comply with all applicable laws and regulations of the Vessel's flag state and any country within the Cruising Area, including, without limitation, any laws and regulations governing charters and any documentation, registration, or customs laws or regulations, such that the Vessel may lawfully be used by the CHARTERER as provided hereunder.

**CLAUSE 29.  Maritime Liens.**

The CHARTERER shall not incur or allow any maritime lien, salvage, or debt on the Vessel or on the OWNER's credit. The CHARTERER shall not abandon the Vessel or enter into any salvage agreement without the OWNER's prior written consent. The CHARTERER shall indemnify and hold the OWNER harmless against and from any liability for any maritime lien, salvage, or debt that arises on the Vessel or the OWNER's credit as a result of any act or omission of the CHARTERER.

**CLAUSE 30.  Additional Conditions.**

Smoking permitted only in areas designated by the Captain.
Fishing is available subject to local laws and acquisition of proper permits.
No pets are permitted.
No more than 12 guests + charterer while cruising or at the dock will be permitted without prior written approval by the Owner and USCG.
Specific dockage/marina requests cannot be guaranteed unless a credit card is provided in advance and availability is noted at that time.
Use of personal watercraft is only permitted subject to the operator having the appropriate license and meeting local operating regulations. Any liability arising from non-compliance is entirely at the operator's risk.
Any damage caused by any guest to the yacht and/or the yachts equipment shall be paid by the Charterer and may be withheld from the APA until estimates are available. The Charterer has the right to purchase additional insurance for such incidents.
The cost of all wire fees incurred should be at the cost of the party forwarding monies, excluding those related to the transfer of provisioning and delivery monies to the Vessel, which shall be at the cost of the Charterer and deducted from the APA.
Crew gratuity is considered discretionary and suggested between 10-20% of the gross Charter Fee if the crew has given good to excellent service.
All parties acknowledge that under the current COVID 19 situation there are inherent cruising limitations and health risks by traveling and that the Owner, Charterer and Crew will make a good faith effort to adhere to CDC and WHO guidelines but cannot guarantee any of these measures will prevent the potential risk of contracting COVID 19 or related illness.
It is understood that the crew has been quarantined on the vessel after testing negative for COVID-19 or being vaccinated. Negative crew tests can be provided upon request. It is also understood that all guests must present a negative COVID-19 RT-PCR test taken within 5 days of arrival or proof of vaccination at least 24 hours before boarding.
The charterer has been given the option to choose the crew and has chosen ALM Yacht Management d.o.o.
The charterer has been given the option to survey the vessel and has declined.

PLEASE INITIAL: Owner ___TB___   Charterer: ___RC___