UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cv-24099-PCH

**"IN ADMIRALTY"**

RONALD CONWAY, an individual,

    Plaintiff,

vs.

M/Y UTOPIA IV, Official No. 1305829, MMSI
No. 339328000, her engines, tackle, gear,
appurtenances, etc., *in rem*, UTOPIA
YACHTING LLC, a Delaware Limited Liability
Company, MARKET AMERICA, INC., a
Delaware corporation, MARKET AMERICA
WORLDWIDE, INC., a North Carolina, and
ALM YACHT MANAGEMENT D.O.O., a
Slovenian private limited company, *in personam*

    Defendants.

## SECOND AMENDED VERIFIED

## *IN REM* AND *IN PERSONAM* COMPLAINT

    Plaintiff Ronald Conway ("Conway"), by and through undersigned counsel, hereby
sues Defendants (defined below).

## PARTIES, JURISDICTION, AND VENUE

    1.  This case involves Plaintiff Conway's *in rem* and *in personam* negligence claims
arising under the General Maritime Law of the United States, the Passenger Vessel Services Act,
46 U.S.C. § 3501 et seq., and the laws of the State of Florida, as applicable.

    2.  At all material times, Defendant M/Y Utopia IV, *in rem*, was and remains a 175.8'
USA flag for-hire passenger yacht built in Pisa, Italy, bearing Official Number 1305829 and
MMSI No. 339328000 with a hailing port in Miami Beach, Florida.

    3.  On November 23, 2021, the Vessel was arrested within this District pursuant to this
Court's Order Directing the Issuance of the Warrant of Arrest [Dkt. No. 6] and the Warrant for

Arrest [Dkt. No 18] executed by the U.S. Marshal or Deputy. The Vessel was released pursuant to an Order of this Court [Dkt. No. 17] after the Vessel and its owners posted bond with this Court in the form of a cash deposit in the amount $3,000,000 pursuant to such Order.

4.     This Second Amended Complaint of Plaintiff Conway against Defendant Utopia IV, her engines, tackle, gear, appurtenances, etc., *in rem*, and against the *in personam* Defendants, is to enforce Plaintiff Conway's preferred maritime liens and seek damages for negligence based on Defendants' failure to provide Plaintiff Conway with a reasonably safe vessel including tender, and failure to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender, resulting in Plaintiff Conway, as passenger, to suffer injuries.

5.     Plaintiff Conway is a person above the age of majority and is a citizen and resident of the State of California.

6.     Defendant, Utopia Yachting LLC ("Utopia LLC"), is a Delaware limited liability company with its principal place of business in the State of Florida. Utopia LLC is and was at all relevant times the title owner and operator of the Vessel and exercised control over the crew members of the Vessel.

7.     Defendant, ALM Yacht Management D.O.O. ("ALM"), upon information and belief, is a Slovenian private limited company doing business in the State of Florida. ALM was the purported employer of the crew and captains on the Vessel.

8.     Defendant, Market America, Inc ("Market America") is a Delaware corporation operating in the United States and internationally. At all relevant times, Market America and its employees served as an agent and/or alter ego of Utopia LLC and exercised control over the crew members and captains of the Vessel.

9.     Defendant, Market America Worldwide, Inc. ("Market America Worldwide") is a North Carolina corporation operating in the United States and internationally. At all relevant times, Market America Worldwide and its employees served as an agent and/or alter ego of Utopia LLC and exercised control over the crew members and captains of the Vessel.

10. Plaintiff Conway has a preferred maritime lien for his injuries caused by Defendants' negligence in failing to furnish Plaintiff Conway a reasonably safe vessel including tender. U.S.C. § 31301(5)(B).

11. Plaintiff Conway is informed and believes, and on that basis alleges, that each *in personam* Defendant named in this Second Amended Complaint is in some manner responsible for the wrongs and damages alleged herein, and in so acting was functioning, at all relevant times, as the agent, representative, servant, partner, alter ego and/or employee of the other *in personam* Defendants, and each of them, and in doing the actions described below, was acting within the course and scope of his or her or its authority as such agent, representative, servant, partner, alter ego and/or employee with the permission and consent of the other *in personam* Defendants. Thus, Utopia LLC, Market America, Market America Worldwide, and ALM are referred to collectively herein as "Owner."

12. This Court has Jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332 and 1333, diversity and admiralty jurisdiction, respectively.

13. Venue is proper in this District because the Vessel is located within the waters of this District.

14. The amount of damages sought in this action, including unliquidated damages and attorneys' fees in this action, is an amount in excess of $3,000,000.

15. Plaintiff Conway's damages include noneconomic damages such as pain and suffering and emotional distress. Since the damages have not been reduced to a liquidated amount, Plaintiff Conway also requests a trial on damages.

## GENERAL ALLEGATIONS

16. At all times material hereto, Owner owned, operated, managed, maintained and/or controlled the Vessel.

17. From at least August 8, 2021 until August 11, 2021, Plaintiff Conway was a passenger of the Vessel owned and operated by Owner, which was in navigable waters.

*Agent and Alter Ego*

18.     Upon information and belief, at all relevant times, Utopia LLC, Market America, Market America Worldwide, and ALM were agents and/or alter egos of one another, such that, for legal purposes and for purposes of this action, the three entities are one and the same.

19.     Upon information and belief, Market America and/or Market America Worldwide is an international multi-level marketing company founded by Loren Ridinger and her husband James Howard Ridinger (the "Ridingers"). Mr. Ridinger is the Chairman and Chief Executive Officer of Market America and/or Market America Worldwide.

20.     Upon information and belief, the Ridingers and/or entities under their control are the ultimate owners of the Vessel.

21.     Upon information and belief, representatives, employees and owners of Utopia LLC, Market America, and Market America Worldwide regularly directed and exercised control over the crew member individuals and captains, purportedly employed by ALM.

22.     Upon information and belief, Utopia LLC, Market America, and Market America Worldwide participated in crew member individual selection and hiring including identifying, providing, assigning, and supplying crew members to passengers on the Vessel on a regular basis.

23.     Upon information and belief, Utopia LLC, Market America, and Market America Worldwide participated in selecting and hiring the captains, including identifying, providing, assigning, and supplying captains to passengers on the Vessel on a regular basis.

24.     Utopia LLC and ALM share the same business address in Fort Lauderdale, Florida.

25.     Marc Powell ("Powell"), who upon information and belief is an employee of Market America and/or Market America Worldwide responded to Plaintiff Conway's demand for information regarding the Vessel's insurance policy and partial defrayment for medical expenses resulting from Plaintiff Conway's Injuries (defined below) suffered on the Vessel.

26.     Upon information and belief, Powell and other Market America and/or Market America Worldwide employees regularly directed and exercised control over the crew member individuals purportedly employed by ALM.

27.     On November 23, 2021, this Court ordered the Vessel "and its owners" to post a bond in the amount of $3,000,000 [Dkt. No. 17], which was satisfied by a cash wire payment that same day deposited with this Court originating from a Market America and/or Market America Worldwide bank account.

### The Charter Agreement

28.     Plaintiff Conway entered into an agreement with Utopia LLC to charter the Vessel for eleven days beginning on August 8, 2021 under the Recreational Bareboat Charter Agreement ("Charter Agreement"), dated April 15, 2021.

29.     Utopia LLC's representative and agent Moran Yacht & Ship Group, Inc., a Florida Corporation ("Moran"), was also signatory to the Charter Agreement.

30.     Plaintiff Conway paid at least $582,144.00 of consideration for use of the Vessel under the Charter Agreement.

31.     Contemporaneously with the Charter Agreement, Plaintiff Conway entered into a Vessel Services Agreement ("Services Agreement", and together with the Charter Agreement, the "Agreements") which included as a party the European-based services company selected and controlled by Utopia LLC, Market America, and Market America Worldwide called ALM.

32.     Plaintiff Conway paid at least $144,286.00 of consideration under the Services Agreement, as well as an advanced provisioning allowance of $216,429.00.

33.     Pursuant to the Agreements, Plaintiff Conway and his guests were scheduled to depart from Kennebunkport, Maine, on August 8, 2021 and travel to Nantucket and Vineyard Haven, Massachusetts, as well as Newport, Rhode Island and Sag Harbor, New York, before departing the Vessel in New York City on August 18, 2021 (the "Scheduled Trip").

*Non-Demise Charter*

34.     Despite the Charter Agreement, Owner retained complete and exclusive control of the Vessel during the Scheduled Trip, including when Plaintiff Conway was injured.

35.     At all material times:

     a.   Owner selected the Vessel's crew;

     b.   Owner denied Plaintiff Conway the ability to select the crew or contest the crew unilaterally selected by Owner;

     c.   Owner directed and controlled the Vessel's crew;

     d.   Owner maintained, supervised, and exercised control over the crew members; and

     e.   Owner retained control over insurance coverage requirements and transportation safety issues.

*Scheduled Trip*

36.     From at least August 8, 2021 until on or about August 11, 2021, Plaintiff Conway was a passenger of the Vessel owned and operated by Owner, which was in navigable waters.

37.     On August 8, 2021, Plaintiff Conway and other passengers departed on the Vessel from Kennebunkport, Maine, for a recreational cruise scheduled for ten days (the "Scheduled Trip").

38.     At all relevant times, a tender boat was an appurtenance of the Vessel.

39.     The crew on the Vessel operated with vast inexperience and during the Scheduled Trip, showed little to no history working together. Upon entry onto the Vessel the first day of the Scheduled Trip, for example, the crew of the Vessel did know how to run electricity or the shower in the master bedroom.

*Injuries*

40.     On August 11, 2021, the fourth day of the Scheduled Trip, Plaintiff Conway suffered severe injuries while exiting the Vessel's tender boat onto the dock at Edgartown Harbor in Edgartown, Massachusetts.

41.     Plaintiff Conway stepped up the distance from the tender floor to the raised dock upon direction from a crew member that Plaintiff Conway use the crew member's shoulder as support while Plaintiff Conway exited the tender floor directly onto the raised dock.

42.     The distance from the tender floor to the dock was unreasonably high for an individual passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit, and no step stool or portable or stationary steps of any type were provided to Plaintiff Conway.

43.     While stepping up the distance from the tender floor to the raised dock, Plaintiff Conway's left knee made a popping noise, and Plaintiff Conway immediately began to collapse.

44.     The crew of the Vessel directed Plaintiff Conway into a sitting position and placed ice on Plaintiff Conway's injured knee.

45.     Plaintiff Conway was then taken by ambulance to Martha's Vineyard Hospital Emergency Department in Oak Bluffs, Massachusetts.

### *Serious Medical Consequences and Emergency Surgery*

46.     Plaintiff Conway's Injuries included a ruptured and torn left quadricep tendon and other damage to his left knee.

47.     After treatment at the Martha's Vineyard Hospital Emergency Department, to minimize the chance of permanent or long-term damage, Plaintiff Conway was flown by medevac to the University of California-San Francisco for emergency orthopedic surgery on August 13, 2021 (the "Emergency Surgery").

48.     After the Emergency Surgery, Plaintiff Conway was required to wear a stationary steel brace from his hip to his ankle for 12 weeks.

### *Significant Required Long-term Care and Rehabilitation*.

49.     Since the Injuries on August 11, 2021, Plaintiff Conway has been severely physically disabled.

50.     It is unclear whether Plaintiff Conway will be able to make a full recovery even after promptly taking all of the difficult, sustained, required actions to attempt to mitigate potential long-term damage.

51.     Following the Emergency Surgery, Plaintiff Conway is required to perform intense, painful physical therapy and a careful rehabilitation regimen for several hours per day under direction of a specialist orthopedic nurse.

52.     For the first month after the Emergency Surgery, Plaintiff Conway had to effectively lay flat and could not move without assistance from a specialist orthopedic nurse. Plaintiff Conway required a full-time orthopedic nurse for 12 weeks following the Emergency Surgery.

53.     As a result of his Injuries, Plaintiff Conway also developed a pulmonary embolism, which has reduced his lung function and requires him to take daily blood thinners.

54.     The Injuries should have never occurred and were a direct result of Owner's negligence in failing to provide a reasonably safe Vessel, including its appurtenance, and Owner negligently instructing Plaintiff Conway to exit the tender by stepping up the distance from the tender floor directly onto the raised dock which created an unsafe condition given the unreasonable distance between the dock and the floor of the tender.

### *Plaintiffs Request to Owner to Furnish Insurance Policy*

55.     On August 29, 2021, pursuant to Clause 16 of the Charter agreement, Plaintiff Conway requested from Owner a copy of the Vessel's insurance policy ("the Policy") to ensure that there was adequate protection and security to indemnify him for the Injuries.

56.     On September 7, 2021, Owner communicated (through its agent and representative Moran) to Plaintiff Conway's representative that Owner refuses to furnish a copy of the Policy or any insurance documents to Plaintiff Conway.  Thus, because of Owner's actions, Plaintiff Conway remains unable to assure proper insurance coverage and an unreserved agreement of Owner's insurer (if any) to indemnify for the Injuries.

57.     On September 24, 2021, in response to Plaintiff Conway's renewed request for a copy of the Vessel's insurance policy, Powell, upon information and belief, a Market America and/or Market America Worldwide employee, communicated to Plaintiff Conway via email that Plaintiff Conway was not entitled to such information. Thus, because of Owner's actions, Plaintiff Conway remains unable to assure proper insurance coverage and an unreserved agreement of Owner's insurer (if any) to indemnify for the Injuries.

## COUNT I

## *IN REM* CLAIM AGAINST THE VESSEL UTOPIA IV

## (NEGLIGENCE)

58.     Plaintiff Conway re-alleges and incorporates by reference the jurisdictional and general allegations in paragraphs 1 through 57 of this Complaint, and further alleges as follows:

59.     This is Plaintiff Conway's *in rem* action to enforce a lien for damages arising from Owner's negligence in failing to provide Plaintiff Conway with a reasonably safe vessel, resulting in Plaintiff Conway suffering Injuries.

60.     At all material times, Owner was the true owner of the Vessel.

61.     At all material times, the Vessel was owned, managed, operated and/or controlled by Owner.

62.     At all material times, Owner owed Plaintiff Conway a duty to exercise reasonable care under the circumstances in providing a reasonably safe vessel, including a reasonably safe tender.

63.     The duty owed to Plaintiff Conway was breached because the Vessel, inclusive of its tender, was not reasonably safe, and the Owner failed to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel.

64.     Owner knew or should have known that the Vessel, inclusive of its tender, was not reasonably safe and knowingly failed to furnish Plaintiff Conway with a reasonably safe vessel including tender.

65.     Owner also knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping the distance from the tender floor directly onto the raised dock created an unsafe condition given the unreasonable distance from the floor of the tender and the dock. Owner affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill and care, and a passenger exiting the Vessel, including its tender, does not know of the dangers and risks of exiting the tender or the adequacy or inadequacy of the equipment used to permit passengers to exit the tender.

66.     Owner's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel, inclusive of its tender, were legal causes of injury and damage to Plaintiff Conway by reason of the following:

      a.   Failure to adequately maintain the Vessel in a reasonably safe condition;

      b.   Failure to adequately maintain the Vessel in a condition reasonably fit for its intended purpose;

      c.   Failing to equip the Vessel with a reasonably safe means to disembark the Vessel's tender onto the dock;

      d.   Failing to provide any equipment to facilitate a safe exit from the tender onto a raised dock, which created an unreasonable distance between the dock and the floor of the tender;

      e.   Failure to inspect the Vessel for fitness or dangerous conditions;

      f.   Failure to repair and/or correct the Vessel's dangerous condition; and

      g.   Failure to warn Plaintiff Conway of dangerous conditions;

67.     As a direct and proximate result of Owner's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper

instructions to safely disembark the Vessel's tender, Plaintiff Conway was injured while disembarking the Vessel's tender and suffered (i) economic damages in the past and in the future including but not limited to medical expenses for medical care and treatment, household expenses, loss of prejudgment value of services hired, loss of the value of the Scheduled Trip itself; (ii) non-economic damages including bodily injury which required surgery, pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement; and (iii) and other damages which may be proven at the trial of this case. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

## COUNT II

## CLAIM AGAINST *IN PERSONAM* DEFENDANT UTOPIA LLC (NEGLIGENCE)

68.     Plaintiff Conway re-alleges and incorporates by reference the jurisdictional and general allegations in paragraphs 1 through 57 of this Complaint, and further alleges as follows:

69.     Upon information and belief, at all relevant times, Utopia LLC, Market America, Market America Worldwide, and ALM were agents and/or alter egos of one another, such that, for legal purposes and for purposes of this action, the three entities are one and the same.

70.     At all material times, Owner was the true owner of the Vessel.

71.     At all material times, the Vessel was owned, managed, operated and/or controlled by Owner.

72.     At all material times, Owner owed Plaintiff Conway a duty to exercise reasonable care under the circumstances in providing a reasonably safe vessel, including a reasonably safe tender.

73.     The duty owed to Plaintiff Conway was breached because the Vessel's tender was not reasonably safe and the Owner failed to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender.

74. Owner knew or should have known that the Vessel, inclusive of its tender, was not reasonably safe and knowingly failed to furnish Plaintiff Conway with a reasonably safe vessel including tender.

75. Owner also knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping the distance from the tender floor directly onto the raised dock created an unsafe condition given the unreasonable distance from the floor of the tender and the dock. Owner affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill and care, and a passenger exiting the Vessel, including its tender, does not know of the dangers and risks of exiting the tender or the adequacy or inadequacy of the equipment used to permit passengers to exit the tender.

76. Owner's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel, inclusive of its tender, were legal causes of injury and damage to Plaintiff Conway by reason of the following:

      a. Failure to adequately maintain the Vessel in a reasonably safe condition;

      b. Failure to adequately maintain the Vessel in a condition reasonably fit for its intended purpose;

      c. Failing to equip the Vessel with a reasonably safe means to disembark the Vessel's tender onto the dock;

      d. Failing to provide any equipment to facilitate a safe exit from the tender onto a raised dock, which created an unreasonable distance between the dock and the floor of the tender;

      e. Failure to inspect the Vessel for fitness or dangerous conditions;

      f. Failure to repair and/or correct the Vessel's dangerous condition; and

g.   Failure to warn Plaintiff Conway of dangerous conditions;

77.     As a direct and proximate result of Owner's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender, Plaintiff Conway was injured while disembarking the Vessel's tender and suffered (i) economic damages in the past and in the future including but not limited to medical expenses for medical care and treatment, household expenses, loss of prejudgment value of services hired, loss of the value of the Scheduled Trip itself; (ii) non-economic damages including bodily injury which required surgery, pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement; and (iii) and other damages which may be proven at the trial of this case. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

## COUNT III

## CLAIM AGAINST *IN PERSONAM* DEFENDANT MARKET AMERICA
## (NEGLIGENCE)

78.     Plaintiff Conway re-alleges and incorporates by reference the jurisdictional and general allegations in paragraphs 1 through 57 of this Complaint, and further alleges as follows:

79.     Upon information and belief, at all relevant times, Utopia LLC, Market America, Market America Worldwide, and ALM were agents and/or alter egos of one another, such that, for legal purposes and for purposes of this action, the three entities are one and the same.

80.     At all material times, Owner was the true owner of the Vessel.

81.     At all material times, the Vessel was owned, managed, operated and/or controlled by Owner.

82.     At all material times, Owner owed Plaintiff Conway a duty to exercise reasonable care under the circumstances in providing a reasonably safe vessel, including a reasonably safe tender.

83.     The duty owed to Plaintiff Conway was breached because the Vessel's tender was not reasonably safe and the Owner failed to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender.

84.     Owner knew or should have known that the Vessel's tender was not reasonably safe and knowingly failed to furnish Plaintiff Conway with a reasonably safe vessel including tender.

85.     Owner also knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping the distance from the tender floor directly onto the raised dock created an unsafe condition given the unreasonable distance from the floor of the tender and the dock. Owner affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill and care, and a passenger exiting the Vessel, including its tender, does not know of the dangers and risks of exiting the tender or the adequacy or inadequacy of the equipment used to permit passengers to exit the tender.

86.     Independently of its capacity as an agent and/or alter ego of Utopia LLC, Market America and its agents breached their duty to Plaintiff Conway by failing to provide a reasonably safe vessel, including a reasonably safe tender, under the circumstances. Market America knew or should have known that the Vessel's tender was not reasonably safe.

87.     Independently of its capacity as an agent and/or alter ego of Utopia LLC, Market America and its agents breached their duty to Plaintiff Conway by failing to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender. Market America and its agents knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping directly onto the raised dock from the tender floor created an unsafe condition. Market America and its agents affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill

and care, and a passenger exiting the Vessel, including its tender, does not know of the dangers and risks of exiting the tender.

88.     Both Owner's and, in its separate independent capacity, Market America's, negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender were legal causes of injury and damage to Plaintiff Conway by reason of the following:

    a.   Failure to adequately maintain the Vessel in a reasonably safe condition;

    b.   Failure to adequately maintain the Vessel in a condition reasonably fit for its intended purpose;

    c.   Failing to equip the Vessel with a reasonably safe means to disembark the Vessel's tender onto the dock;

    d.   Failing to provide any equipment to facilitate a safe exit from the tender onto a raised dock, which created an unreasonable distance between the dock and the floor of the tender;

    e.   Failure to inspect the Vessel for fitness or dangerous conditions;

    f.   Failure to repair and/or correct the Vessel's dangerous condition; and

    g.   Failure to warn Plaintiff Conway of dangerous conditions;

89.     As a direct and proximate result of Owner's and, in its separate independent capacity, Market America's, negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender, Plaintiff Conway was injured while disembarking the Vessel's tender and suffered (i) economic damages in the past and in the future including but not limited to medical expenses for medical care and treatment, household expenses, loss of prejudgment value of services hired, loss of the value of the Scheduled Trip itself; (ii) non-economic damages including bodily injury which required surgery, pain, suffering, mental anguish, emotional

distress, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement; and (iii) and other damages which may be proven at the trial of this case. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

## COUNT IV

## CLAIM AGAINST *IN PERSONAM* DEFENDANT MARKET AMERICA WORLDWIDE (NEGLIGENCE)

90.     Plaintiff Conway re-alleges and incorporates by reference the jurisdictional and general allegations in paragraphs 1 through 57 of this Complaint, and further alleges as follows:

91.     Upon information and belief, at all relevant times, Utopia LLC, Market America, Market America Worldwide, and ALM were agents and/or alter egos of one another, such that, for legal purposes and for purposes of this action, the three entities are one and the same.

92.     At all material times, Owner was the true owner of the Vessel.

93.     At all material times, the Vessel was owned, managed, operated and/or controlled by Owner.

94.     At all material times, Owner owed Plaintiff Conway a duty to exercise reasonable care under the circumstances in providing a reasonably safe vessel, including a reasonably safe tender.

95.     The duty owed to Plaintiff Conway was breached because the Vessel's tender was not reasonably safe and the Owner failed to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender.

96.     Owner knew or should have known that the Vessel's tender was not reasonably safe and knowingly failed to furnish Plaintiff Conway with a reasonably safe vessel including tender.

97.     Owner also knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping the distance from the tender floor directly onto the raised dock created an unsafe condition given the

unreasonable distance from the floor of the tender and the dock. Owner affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill and care, and a passenger exiting the Vessel, including its tender, does not know of the dangers and risks of exiting the tender or the adequacy or inadequacy of the equipment used to permit passengers to exit the tender.

98.     Independently of its capacity as an agent and/or alter ego of Utopia LLC, Market America Worldwide and its agents breached their duty to Plaintiff Conway by failing to provide a reasonably safe vessel, including a reasonably safe tender, under the circumstances. Market America Worldwide knew or should have known that the Vessel's tender was not reasonably safe.

99.     Independently of its capacity as an agent and/or alter ego of Utopia LLC, Market America Worldwide and its agents breached their duty to Plaintiff Conway by failing to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender. Market America Worldwide and its agents knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping directly onto the raised dock from the tender floor created an unsafe condition. Market America Worldwide and its agents affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill and care, and a passenger exiting the Vessel, including its tender, does not know of the dangers and risks of exiting the tender.

100.    Both Owner's and, in its separate independent capacity, Market America Worldwide's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender were legal causes of injury and damage to Plaintiff Conway by reason of the following:

        h.  Failure to adequately maintain the Vessel in a reasonably safe condition;

        i.  Failure to adequately maintain the Vessel in a condition reasonably fit for its intended purpose;

j.   Failing to equip the Vessel with a reasonably safe means to disembark the Vessel's tender onto the dock;

k.   Failing to provide any equipment to facilitate a safe exit from the tender onto a raised dock, which created an unreasonable distance between the dock and the floor of the tender;

l.   Failure to inspect the Vessel for fitness or dangerous conditions;

m.   Failure to repair and/or correct the Vessel's dangerous condition; and

n.   Failure to warn Plaintiff Conway of dangerous conditions;

101.   As a direct and proximate result of Owner's and, in its separate independent capacity, Market America Worldwide's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender, Plaintiff Conway was injured while disembarking the Vessel's tender and suffered (i) economic damages in the past and in the future including but not limited to medical expenses for medical care and treatment, household expenses, loss of prejudgment value of services hired, loss of the value of the Scheduled Trip itself; (ii) non-economic damages including bodily injury which required surgery, pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement; and (iii) and other damages which may be proven at the trial of this case. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

## COUNT V

## CLAIM AGAINST *IN PERSONAM* DEFENDANT ALM

## (NEGLIGENCE)

102.     Plaintiff Conway re-alleges and incorporates by reference the jurisdictional and general allegations in paragraphs 1 through 57 of this Complaint, and further alleges as follows:

103.     Upon information and belief, at all relevant times, Utopia LLC, Market America, Market America Worldwide, and ALM were agents and/or alter egos of one another, such that, for legal purposes and for purposes of this action, the three entities are one and the same.

104.     At all material times, Owner was the true owner of the Vessel.

105.     At all material times, the Vessel was owned, managed, operated and/or controlled by Owner.

106.     At all material times, Owner owed Plaintiff Conway a duty to exercise reasonable care under the circumstances in providing a reasonably safe vessel, including a reasonably safe tender.

107.     The duty owed to Plaintiff Conway was breached because the Vessel's tender was not reasonably safe and the Owner failed to reasonably provide Plaintiff Conway with proper instructions to safely disembark the Vessel's tender.

108.     Owner knew or should have known that the Vessel's tender was not reasonably safe and knowingly failed to furnish Plaintiff Conway with a reasonably safe vessel including tender.

109.     Owner also knew or should have known that instructing a passenger, particularly a passenger of Plaintiff Conway's age and physical condition, to exit the tender by stepping the distance from the tender floor directly onto the raised dock created an unsafe condition given the unreasonable distance from the floor of the tender and the dock. Owner affirmatively warranted to Plaintiff Conway that taking such action was without danger. Disembarking the Vessel involved the risk of physical injury if not performed with skill and care, and a passenger exiting

the Vessel, including its tender, does not know of the dangers and risks of exiting the tender or the adequacy or inadequacy of the equipment used to permit passengers to exit the tender.

110.    Owner's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper instructions to safely disembark the Vessel, inclusive of its tender, were legal causes of injury and damage to Plaintiff Conway by reason of the following:

a.   Failure to adequately maintain the Vessel in a reasonably safe condition;

b.   Failure to adequately maintain the Vessel in a condition reasonably fit for its intended purpose;

c.   Failing to equip the Vessel with a reasonably safe means to disembark the Vessel's tender onto the dock;

d.   Failing to provide any equipment to facilitate a safe exit from the tender onto a raised dock, which created an unreasonable distance between the dock and the floor of the tender;

e.   Failure to inspect the Vessel for fitness or dangerous conditions;

f.   Failure to repair and/or correct the Vessel's dangerous condition; and

g.   Failure to warn Plaintiff Conway of dangerous conditions;

111.    Independently of its capacity as an agent and/or alter ego of all other *in personam* defendants, ALM and its agents breached their duty to Plaintiff Conway by providing a negligently trained crew who operated with vast inexperience during the Scheduled Trip and showed little to no history working together. ALM and its agents knew or should have known that providing a negligently trained crew was not reasonably safe and knowingly failed to provide Plaintiff Conway with a reasonably trained crew.

112.    As a direct and proximate result of: Owner's negligence in failing to provide a reasonably safe vessel including tender and failing to provide Plaintiff Conway with proper

instructions to safely disembark the Vessel's tender, and ALM providing a negligently trained crew, Plaintiff Conway was injured while disembarking the Vessel's tender and suffered (i) economic damages in the past and in the future including but not limited to medical expenses for medical care and treatment, household expenses, loss of prejudgment value of services hired, loss of the value of the Scheduled Trip itself; (ii) non-economic damages including bodily injury which required surgery, pain, suffering, mental anguish, emotional distress, loss of enjoyment of life, physical impairment and disability, inconvenience, scarring, disfigurement; and (iii) and other damages which may be proven at the trial of this case. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

      **WHEREFORE**, Plaintiff Conway respectfully requests:

      a.  That Plaintiff Conway be decreed to have a preferred maritime lien upon the *in rem* Defendant Utopia IV, and that such lien be foreclosed in accordance with the law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiff Conway; and

      b.  That judgment be entered against the Defendants in Plaintiff Conway's favor in an amount no less than $3,000,000 for all recoverable damages permitted by law, including compensatory damages, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just.

## <u>DEMAND FOR JURY TRIAL</u>

      Plaintiff Conway, pursuant to Fed. R. Civ. P. 38(b), hereby demands a trial by jury of any issue triable of right by a jury.

Dated March 21, 2021

Respectfully submitted,

MASE MEBANE SEITZ, P.A
*Attorneys for Plaintiff*
2601 South Bayshore Drive, Suite 800
Miami, Florida  33133
Telephone:    (305) 377-3770
Facsimile:     (305) 377-0080

By:    /s/ *Tyler Rauh*
       CURTIS J. MASE
       Florida Bar No.: 478083
       cmase@maselaw.com
       TYLER J. RAUH
       Florida Bar No.: 1023404
       trauh@maselaw.com

       *Attorneys Admitted Pro Hac Vice*

       RONALD A. MCINTIRE
       California Bar No. 127407
       RMcIntire@perkinscoie.com
       PERKINS COIE LLP
       1888 Century Park E, Suite 1700
       Los Angeles, California 90067
       Telephone:    310.788.9900
       Facsimile:    310.788.3399

       MICHAEL A. BARCOTT
       Washington State Bar No. 13317
       mbarcott@hwb-law.com
       HOLMES WEDDLE & BARCOTT
       3101 Western Avenue, Suite 500
       Seattle, Washington 98121
       Telephone:    206.292.8008
       Facsimile:    206.340.0289

## **VERIFICATION**

I, Ronald Conway, make this Verification and the following representations:

1.  I am over the age of eighteen and competent to make this Verification.

2.  I have read the foregoing Second Amended Complaint and hereby verify and represent under oath that its contents are true to the best of my knowledge, and/or information and belief.

3.  The allegations in this Second Amended Complaint are based on my personal knowledge as the injured party in this complaint and/or information and documents obtained from my agents or others.


FURTHER AFFIANT SAYETH NAUGHT

                                                                    _____
                                                                    Ronald Conway


STATE OF CALIFORNIA            )
                               )
COUNTY OF MARIN                )

        The foregoing instrument was acknowledged before me on March 20, 2022, by Ronald Conway, who is personally known to me.


                                                            _____
                                                            Notary Public
                                                            My Commission Expires: March 10, 2026

PEGGY J. ACKERBERG
Notary Public – California
San Francisco County
Commission # 2230866
My Comm. Expires Mar 10, 2022