```
 1                  IN THE UNITED STATES DISTRICT COURT
                   FOR THE SOUTHERN DISTRICT OF FLORIDA
 2                            MIAMI DIVISION
                       CASE NO. 1:21-cv-24099-PCH
 3
       RONALD CONWAY,
 4
                    Plaintiff,                    July 13, 2022
 5                                                2:45 p.m.
                    vs.
 6
       M/Y UTOPIA IV, Official No. 1305829,
 7     MMSI No. 339328000, her engines, tackle,
       gear, appurtenances, etc., in rem, et al.
 8             Defendants.                    Pages 1 THROUGH 21
       _____
 9
                       TRANSCRIPT OF MOTION HEARING
10                  BEFORE THE HONORABLE PAUL C. HUCK
                   UNITED STATES SENIOR DISTRICT JUDGE
11
       Appearances:
12
       FOR THE PLAINTIFF:   PERKINS COIE, LLP
13     (via Zoom)           JACOB DEAN, ESQ.
                            DORIS ALVAREZ-REYES, ESQ.
14                          1888 Century Park East, Suite 1700
                            Los Angeles, California 90067
15
       FOR THE DEFENDANTS: WOMBLE BOND DICKINSON, LLP
16     (via Zoom)           PRESSLY M. MILLEN, ESQ.
                            555 Fayetteville Street, Suite 1100
17                          Raleigh, North Carolina 27601

18                          WIEDERHOLD & KUMMERLEN, PA
                            JOHN P. WIEDERHOLD, ESQ.
19                          JEANETTE M. LUGO, ESQ.
                            340 Columbia Drive, Suite 111
20                          West Palm Beach, Florida 33409

21     COURT REPORTER:      Yvette Hernandez
                            U.S. District Court
22                          400 North Miami Avenue, Room 10-2
                            Miami, Florida 33128
23                          yvette_hernandez@flsd.uscourts.gov

24

25
```

```
1          (Call to order of the Court, 2:45 p.m.)

2               THE COURT:  Ready to proceed?

3               Counsel, are you ready to proceed in Conway v. the M/Y

4     Utopia IV, et al?

5               MR. MILLEN:  Yes, Your Honor.

6               THE COURT:  Counsel, let's have appearances first

7     for --

8               MS. ALVAREZ:  Hi, Your Honor.  This is Doris Alvarez,

9     from Perkins Coie.  We're having technical difficulties.  It

10    seems like you can hear me, but I can't hear anyone.  And my

11    colleague is also experiencing the same issues.  So we're

12    trying to sort it out.  Apologies.

13              THE COURT:  Okay.  Everybody else is okay hearing and

14    speaking?

15              MR. WIEDERHOLD:  Yes, Your Honor.

16              MS. LUGO:  Yes, Your Honor.

17              MR. MILLEN:  Yes, Your Honor.

18         (Pause in proceedings.)

19              MR. DEAN:  Hello?  Are you able to hear us, Your

20    Honor?

21              THE COURT:  With a bad echo.

22              MR. DEAN:  We're having issues with the volume, and

23    we're trying to figure it out.

24              THE COURT:  Well, the problem is I've got hearings

25    after this.  So I only have so much time to devote to this.
```

```
 1              MR. DEAN:  Are you able to hear me now, Your Honor?

 2              THE COURT:  I can.

 3              MR. DEAN:  Okay.  We can move forward, if you're okay.

 4    We are not going to have perfect volume, but we'll have --

 5    we'll have my cell phone and some video.

 6              THE COURT:  You're coming in loud and clear right now.

 7              How about the rest of the participants?  Court

 8    reporter, defense counsel, everybody here?

 9              MS. LUGO:  Yes, Your Honor.

10              MR. WIEDERHOLD:  Yes, Your Honor.

11              THE COURT:  Okay.

12              All right.  We're here in the matter of Conway v. the

13    Motor Yacht Utopia IV and the others.

14              May I have appearances first for the Plaintiff?

15              MR. DEAN:  This is Jake Dean on behalf of Plaintiff.

16    And my colleague, Doris Alvarez Reyes, is here as well.

17              THE COURT:  And what was your name again, please?

18              MR. DEAN:  Jacob Dean.

19              THE COURT:  Dean?

20              MR. DEAN:  And then my -- yes, Dean.  D-E-A-N.

21              And then my colleague, who just popped up on the

22    screen, Doris Alvarez Reyes.

23              THE COURT:  And for the Defendants?  First for the

24    yacht and Market America.

25              MR. MILLEN:  Your Honor, this is Press Millen from the
```

```
 1    Womble Bond Dickinson Firm in Raleigh for Market America.  My

 2    colleagues in Florida, Mr. Wiederhold and Ms. Lugo, are present

 3    as well.

 4             THE COURT:  Okay.  And do we have ALM on the line?

 5    They are not directly involved in this.

 6             No?  Okay.

 7             MR. DEAN:  ALM is not here.

 8             THE COURT:  All right.  We are here on a motion to

 9    dismiss the second amended complaint as it relates to Market

10    America, Inc.

11             Before we get into that, I'm assuming that everybody

12    agrees that Market America Worldwide is now out of the lawsuit.

13             MR. DEAN:  Yes, Your Honor.

14             THE COURT:  Okay.  All right.  And, Mr. Dean, are you

15    the author of the second amended complaint?

16             MR. DEAN:  I am not.  The author of the second

17    complaint is no longer with our firm and is now doing public

18    service work.  So I have stepped in for him.  Ms. Alvarez

19    Reyes, who is on the call as well, she had some input in

20    drafting that complaint.  Though I think she's having some

21    audio issues as well.

22             THE COURT:  All right.  I assume you've read the

23    complaint.  You've read the memos.  You've read the motion to

24    dismiss, your opposition, and the reply.

25             MR. DEAN:  Yes, sir.
```

```
1          THE COURT:  And is your position the same as stated
2    originally in the opposition, or have you modified your
3    position in any way?
4          MR. DEAN:  It's the same, though I would like to focus
5    on -- that we believe that we've sufficiently alleged that duty
6    and the breach.  I know that Defendant's reply focuses more on
7    the alter ego theory.  But we did allege, in our view, the duty
8    and breach separate and apart from the alter ego.  Otherwise,
9    everything else is exactly the same.  I just wanted to make
10   that one clarification.
11         THE COURT:  So when you say:  "Separate and apart from
12   the alter ego," you mean direct liability?
13         MR. DEAN:  Exactly, Your Honor.
14         THE COURT:  All right.  I guess we can talk about that
15   first.  I have to say I have some serious issues with the
16   complaint, not only the direct liability, but also the alter
17   ego.  And by the way, the alter ego is, like so many things in
18   the second amended complaint, kind of vague and contradictory
19   or whatever, because it says:  "Agent/and/or alter ego."  So
20   I'm not sure what it is -- what you're actually alleging.  Is
21   it alter ego or is it an agency situation here?
22         MR. DEAN:  Yes, Your Honor.  To Market America, we are
23   alleging both.  One, they are the owner of the vessel.  And
24   two, to the extent they are not the owner, they are the alter
25   ego of the Utopia LLC entity, such that they exercised complete
```

```
 1    control --
 2            THE COURT:  Okay.  That wasn't -- time out.  That
 3    wasn't my question.  My question dealt with:  Throughout your
 4    complaint, you refer to not only alter ego, but you say:
 5    "Agent/alter ego."  Is your argument basically alter ego and
 6    not agent?
 7            MR. DEAN:  Correct.  Market America, we're alleging is
 8    the alter ego, not the agent.
 9            THE COURT:  That's what I thought.  But it's in the
10    complaint.
11            All right.  As to the direct liability, you're
12    alleging that Market America is the owner of the yacht,
13    correct?
14            MR. DEAN:  Correct, Your Honor.
15            THE COURT:  And you are also alleging that Utopia
16    Yachting, LLC is the owner of the yacht?
17            MR. DEAN:  Correct, Your Honor.  It's our
18    understanding that they are co-owners of this yacht.  And
19    you'll see references to that in our --
20            THE COURT:  Okay.  Time out.  Time out.  Time out.
21    Time out.  Time out.  Just listen to my question.
22            All right.  Are they -- on your complaint, you say
23    that -- and I'm referring to Utopia Yachting, LLC as "Utopia"
24    from here on out, so we understand that.  I'm not referring to
25    the yacht, but the entity that is Utopia Yachting.
```

```
 1              In the complaint, it alleges that Utopia is the title

 2      owner; is that correct?

 3              MR. DEAN:  It is correct that we believe they are the

 4      title owner, but it's also correct that we believe that Market

 5      America is the title owner.  And that, if you --

 6              THE COURT:  Time out.  Time out.  Time out.

 7              Okay.  Do you have any documentation which reflects

 8      that anybody other than Utopia is the title owner of this

 9      yacht?

10              MR. DEAN:  It's my understanding, Your Honor, we don't

11      have any documentation or evidence regarding any of these

12      companies at this time because discovery is still ongoing.  We

13      haven't --

14              THE COURT:  Okay.  Time out.

15              MR. DEAN:  But --

16              THE COURT:  Okay.  I don't need a long explanation.  I

17      just need a direct answer to my question.  Okay?

18              MR. DEAN:  Yes, Your Honor.

19              THE COURT:  So this case has been around for about

20      eight months.  Do you have any evidence, anything that would go

21      before a jury, that would show that anybody other than Utopia

22      is the owner of this yacht?

23              MR. DEAN:  No direct evidence, Your Honor.

24              THE COURT:  Well, what indirect evidence do you have?

25              MR. DEAN:  Well, Docket Number 17, which was Your
```

1   Honor's order directing the owners of the yacht to post the $3

2   million bond, was posted by Market America.  I think we

3   represented that at Paragraph 27 in our complaint.  And that's

4   Document Number 17 of this docket that shows that, Your Honor.

5          THE COURT:  That shows they put up the bond.  But give

6   me some evidence -- I'm not talking about what you think or

7   understand or hope -- some evidence that anybody other than

8   Utopia is the owner, the actual owner of the vessel.  And I

9   want you to keep in mind Rule 11 of the Rules of Civil

10  Procedure.

11         MR. DEAN:  Of course, Your Honor.  And I'd always keep

12  that in mind.

13         The only evidence we have is what I just mentioned,

14  which was at Docket Number 17.  We are still in discovery.  We

15  haven't received any documents from the Utopia Defendant that

16  gives us that information at this point.

17         THE COURT:  The reason I'm asking these questions --

18  and I have to say, this complaint, to me, reflects a lot of

19  serious pleading problems, a lot of them.  And this is one of

20  them.  To say all these people are the owners and not have any

21  evidence to that fact, and say:  "On information and belief,"

22  and eight months later, having no evidence whatsoever, creates,

23  to me, I think, a serious problem for the Plaintiff with regard

24  to not only the viability of the count, but the good-faith

25  allegation in the complaint.  I'm just talking about that right

1    now.

2          What you're trying to do, it seems to me, is you want

3    to, without any basis, any factual basis, alleged or

4    otherwise -- and the fact that they put up the bond or

5    negotiated to put up the bond is not evidence of ownership of

6    the vessel.  Let me say that right now as a matter of law.  And

7    that's my ruling on that point.

8          MR. DEAN:  Understood.

9          THE COURT:  Eight months later, you don't have any

10   evidence whatsoever for your allegation that all these

11   people -- all these various entities are the owner of the

12   vessel.  That is not only fanciful, it just makes no sense.  Or

13   to use the language, the legal language, it seems pretty

14   implausible.

15         And you allege a lot of things on information and

16   belief.  But now's the time, eight months later, after you

17   filed this lawsuit, that you should have some good-faith basis

18   for making that suggestion or the allegation.

19         So I'm going to ask you one more time:  As a lawyer --

20   keep in mind Rule 11 -- do you have any evidence, directly or

21   circumstantial evidence, that anybody other than Utopia owns

22   the yacht?

23         MR. DEAN:  Again, Your Honor, the only evidence I have

24   is what I have set forth.  I have no other evidence besides

25   that at this point in time.

```
 1            THE COURT:  And that's the bond?

 2            MR. DEAN:  Correct, Your Honor.

 3            THE COURT:  And that is -- that does not in any way

 4   move forward your argument or support your argument.

 5            I just wish you would kind of get this case down to

 6   what it really should be about.  And you got what seems to be a

 7   pretty straightforward case.  Someone fell, hurt his leg, you

 8   say, severely.  You've got a $3 million bond.  You've got what

 9   I assume is a very expensive yacht.  You may have some

10   additional insurance.  You've got a second Defendant, ALM.  And

11   yet, you're trying to make these arguments on information and

12   belief that I don't see any basis for.  I really don't.  But

13   we'll go through that.

14            I don't see any basis for the direct.  And I'm going

15   to take as face value you don't have any evidence other than

16   the bond.  And based on that, I don't find that that's a viable

17   claim.  Okay?

18            MR. DEAN:  Understood, Your Honor.

19            THE COURT:  And you're not talking about agency.  So

20   we're talking about alter ego.  And that, to me -- as I looked

21   at this complaint, I looked at the real -- the crux of the

22   basis for suing Market America.

23            Okay.  I assume you all agree that North Carolina law

24   applies; is that correct?

25            MR. DEAN:  Yes, Your Honor.
```

1          THE COURT:  Okay.  All right.  Well, we've done some

2     research on North Carolina law.  And North Carolina courts

3     utilize what is referred to as the instrumentality rule when

4     determining if a corporation is merely the alter ego of

5     another.

6          Now, in the complaint -- again, it seems kind of

7     nonsensical, but you say one is the alter ego of the other.

8     And then you go reverse and say the other is the alter ego of

9     the other one.  It's got to be one way or the other.

10          I'm assuming your bottom line is that Utopia is the

11     alter ego of Market America and not the other way around.

12          MR. DEAN:  It's the opposite, Your Honor.  We believe

13     Market America is the alter ego of Utopia.  It's our

14     understanding, based on the facts that we've discovered, that

15     the Utopia LLC is essentially a shell company.  It's a mere

16     fiction.  And that Market America is actually the company that

17     is pulling all the strings.

18          THE COURT:  Well, wouldn't Utopia then be the alter

19     ego?  Or do I have it backwards?

20          MR. DEAN:  I guess I have it backwards, Your Honor.

21     And I apologize.  I've always assumed or thought of it the

22     other way.  But yes, I think we're saying the same thing.

23          THE COURT:  Okay.  And so you don't have it going both

24     ways, as you've alleged in the complaint?

25          MR. DEAN:  Correct.

```
 1              THE COURT:  It only goes one way.

 2              MR. DEAN:  Correct.

 3              THE COURT:  Okay.

 4              MR. DEAN:  And we can amend our pleading to make that

 5    clear.

 6              THE COURT:  Okay.  Well, let's talk about North

 7    Carolina law.  It seems, in North Carolina, based on the

 8    Supreme Court decision in Glenn v. Wagner, it holds that

 9    piercing the corporate veil does not require a rigid

10    interpretation of the elements, but rather a weighing of the

11    factors to determine whether, quote:  "The controlled

12    entity" -- in this case, that would be Utopia -- "has no

13    separate mind, will, or existence of its own and is therefore

14    the mere instrumentality or tool of the dominant corporation,"

15    that being Market America.  That seems to be the law in North

16    Carolina, just kind of a general statement.

17              In another decision, Anderson v. Dobson, referring to

18    the instrumentality rule, it says that rule requires the

19    following:  "Control, not mere majority or complete stock

20    control, but complete domination, not only over finances, but

21    of policy and business practice in respect to the transaction

22    attacked, so that the corporate entity as to that transaction

23    had, at that time, no separate mind, will, or existence of its

24    own."

25              Next:  "And two, such control must have been used by
```

1    the defendant to commit fraud or wrong, or to perpetuate

2    violation of statutory or other positive legal duty, or a

3    dishonest and unjust act in contravention of the plaintiff's

4    legal rights, and that all the aforementioned control and the

5    breach of duty must have proximally caused the injury or unjust

6    law complained of by the plaintiff."

7           All right.  What evidence do you have to support those

8    factors?

9           MR. DEAN:  Yes, Your Honor.

10          So going to the first one, control, I'll point you

11   back to Docket Number 17.  That's the order of the vessel that

12   was paid on behalf of Market America.  We've also discovered

13   that person by the name of Joe Bolyard, who signed the

14   agreement on behalf of Utopia, is actually Market America's

15   vice president -- I believe executive vice president.

16          That fact's not in the complaint.  That's something

17   that we just learned within the last week.  And if we are

18   allowed leave to amend, if you don't -- if you grant their

19   motion to dismiss, we would like to add that fact because we

20   think that's pretty --

21          THE COURT:  Let me stop you.  Let me stop you.

22          Okay.  Go through that again.  Who is this gentleman

23   again?

24          MR. DEAN:  His name is Joe Bolyard.  That's

25   B-O-L-Y-A-R-D.  And he is the person who shows up as signing on

1   behalf of the Utopia, LLC entity.

2          Mr. Bolyard --

3          THE COURT:  Okay.  What's the -- okay.  Go ahead.

4          MR. DEAN:  Mr. Bolyard is, in fact, the executive vice

5   president of Market America, not Utopia.

6          And it's our understanding as well, Your Honor, in

7   conducting informal discovery -- because, again, we don't have

8   any documents yet from the Defendant -- that Market America

9   employees are the individuals who selected the crew.  They are

10  the individuals who selected the captain, who -- they supplied

11  the food for the vessel, who had the weekly meetings with the

12  crew of the vessel.

13         From everything that we've learned through our

14  informal discovery -- and we're still in the process of getting

15  this through our formal discovery with Defendants, Market

16  America --

17         THE COURT:  You know what?  Time out.  Here's what I'm

18  going to do, I think, rather than go through all this

19  exercise -- because I don't think you've alleged in the

20  complaint alter ego.  To me, it's not even a close question.

21  And I really am concerned about Rule 11 on this, quite frankly.

22         But rather than go through all this exercise that I'm

23  going to go through and frustrate everybody, including the

24  Court, I'm going to dismiss them without prejudice.  You can do

25  your discovery.  And if you believe, under Rule 11, after

1   you've done some discovery, and you can allege something not on

2   information and belief, but on actual evidence, that you have a

3   claim against Market America, then you can file a motion to

4   amend to add them back in.  But, right now, this complaint is

5   woefully inadequate to meet North Carolina standard for

6   piercing the corporate veil and saying that Utopia is merely an

7   alter ego of Market America.  I mean, to me, it's not even a

8   close question.

9        It may be down the road there's something, but you

10  haven't got it here.  And it doesn't sound like, at this point,

11  you've done your homework to come up with something other than

12  on information and belief and some individual facts, which, the

13  ones alleged in the complaint are woefully short of what you

14  need to show control, woefully short of what you need to show

15  to pierce the corporate veil, not even close.

16       So I might as well just cut right to the chase.  And

17  you keep saying:  "We haven't finished discovery."  We've been

18  eight months into this trial -- into this case, and it seems to

19  me you've had more than enough time to get the discovery you

20  want if you had a legitimate claim for alter ego to pierce the

21  corporate veil.

22       But I think that probably the easiest thing to do is

23  get rid of them for right now without prejudice, and then

24  you're going to have to go do your discovery.  And better do it

25  pretty quickly because there's a deadline for amending the

1  pleadings.  And if you have got a good-faith basis, consistent

2  with Rule 11, that you have an alter ego claim here, then have

3  at it, and I'll consider a motion to amend to add them back.

4       But let's not, you know, play games here.  I just --

5  I'm not criticizing you.  You didn't do this complaint.  But it

6  seems to me you've made this case so much more complex than it

7  needs to be and should be, and there's not a legal basis for

8  doing so.  So we're wasting a lot of your time, Defendant's

9  time, and the Court's time on something that you haven't done

10  your homework on.  You just threw a bunch of things out there

11  on information and belief because you want to get another

12  entity in there.

13       And I think you -- and I'll give you some free advice

14  here.  You may want to consider whether it's worth the candle,

15  the time and effort to do this, given the nature of the

16  injuries and the potential recovery, assuming you're going to

17  win this case and you're going to have liability and you prove

18  all your damages up -- whether a $3 million is sufficient,

19  together with the value of the yacht itself and any claim you

20  may have against ALM.

21       I have no idea what the extent of these damages are.

22  I do know it's a leg injury and apparently a knee blown out.

23  But I think you ought to do some real serious thinking about

24  whether you want to go down the route of this alter ego theory.

25  That's just some free advice to you.

```
 1          MR. DEAN:  Understood, Your Honor.  Your points are
 2    well taken.
 3          THE COURT:  But, you know, I'm just thinking to
 4    myself -- you know, we're talking about plausibility here.  And
 5    I read this complaint, and the first thing that jumps out to
 6    me:  This is somebody who really hasn't thought this through.
 7    I don't mean to criticize the person who's moved on to public
 8    service, but I just -- so I could go through all the reasons
 9    why I don't think there's an allegation with regard to --
10    sufficient allegations with regard to alter ego.  Not
11    conclusions, but actually factual basis for alter ego.  It's
12    just not in the complaint.
13          So I'm going to grant the motion to dismiss without
14    prejudice.  You do your homework, do your discovery.  And then,
15    if you feel you've got a good-faith basis for claiming that
16    Market America is an appropriate Defendant in this case, then
17    file your motion to amend and add them.
18          And I'm assuming that Market America doesn't have any
19    problem with that approach; is that right, Mr. Millen?
20          MR. MILLEN:  That's correct, Your Honor.
21          THE COURT:  Okay.  The reason -- I'll tell you one of
22    the reasons why I'm taking this attitude and this correct
23    approach is I'm assuming these are smart business people on the
24    Defendant's side.  And you just don't set up a corporation -- a
25    bunch of corporate entities so that they can be piercing the
```

 1    veil.

 2          I mean, this is a fairly straightforward business

 3    arrangement.  There's a very valuable asset, a yacht.

 4    Typically, it's owned by a corporation.  And that corporation,

 5    in turn -- maybe the stock is owned by another corporation, in

 6    this case, Market America.  I assume that's the case -- or they

 7    are side by side, something like that, or maybe the

 8    shareholders are the same, but it may not be a

 9    parent/subsidiary situation.

10          But this is such a common business arrangement that it

11    just seems so implausible that you're going to find evidence

12    that supports that this arrangement was set up to defraud

13    anybody.  I just -- or for some inappropriate purpose.  But it

14    may well be that case, and you will have a chance to do your

15    discovery and prove it and make that allegation.  And I'll

16    consider that when you -- when and if you move to amend the

17    complaint.  Fair enough?

18          MR. DEAN:  Understood, Your Honor.  Your points are

19    well taken.

20          THE COURT:  Okay.  I had a nice legal argument to go

21    through, but I don't think it makes any sense to do that.

22    North Carolina law is pretty demanding with regard to control

23    and the other aspects of it.  And I just don't -- and those

24    three or four things that you have alleged factual basis, you

25    know, about the bond, and communication, things of that nature,

1    they don't come close to piercing the corporate veil.  So ...

2            MR. DEAN:  Understood.

3            THE COURT:  I'm going to take the shortcut way and

4    just go ahead and do that.  I will give you a very brief order

5    to that effect.  And we'll see what happens in the future.

6            In the meantime, we've got a trial date coming up,

7    what, about five or six months?  So you ought to do it pretty

8    quickly because there's a deadline for amending complaints or

9    any kind of pleading.

10           Okay.  Is there anything we have to take up?

11           MR. MILLEN:  Not from the Defendant.

12           THE COURT:  From the Plaintiff?

13           MR. DEAN:  Nothing from our end, Your Honor.

14           THE COURT:  Mr. Millen, I kind of ran roughshod over

15    you today.  I apologize for that, but I just -- you know, to

16    me, this is not even a close case.  And so I -- you know, we

17    could sit here and go through the legal nuisances, but the

18    bottom line is going to be the same.

19           MR. DEAN:  We appreciate Your Honor's time and being

20    direct.

21           THE COURT:  You'll have a chance to show me where I

22    was shortsighted or just missed the boat, or maybe some things

23    will be disclosed in discovery that will change the whole

24    complex of this case.  But right now, I don't think you've got

25    it.  So -- okay.

1              Thank you-all.  Have a good day.

2              MR. DEAN:  Thank you, Your Honor.

3          (Proceedings concluded at 3:13 p.m.)

1  UNITED STATES OF AMERICA      )

2  ss:

3  SOUTHERN DISTRICT OF FLORIDA  )

4              C E R T I F I C A T E

5        I, Yvette Hernandez, Certified Shorthand Reporter in

6  and for the United States District Court for the Southern

7  District of Florida, do hereby certify that I was present at,

8  and reported in machine shorthand, the proceedings had the 13th

9  day of July, 2022, in the above-mentioned court; and that the

10  foregoing transcript is a true, correct, and complete

11  transcript of my stenographic notes.

12        I further certify that this transcript contains pages

13  1 - 21.

14        IN WITNESS WHEREOF, I have hereunto set my hand at

15  Miami, Florida, this 15th day of July, 2022.

16

17                    /s/Yvette Hernandez
                      Yvette Hernandez, CSR, RPR, CLR, CRR, RMR
18                    400 North Miami Avenue, 10-2
                      Miami, Florida 33128
19                    (305) 523-5698
                      yvette_hernandez@flsd.uscourts.gov
20

21

22

23

24

25